438

Robin BAUM, individually and on behalf of all others similarly situated, Plaintiffs–Appellees/Cross–Appellants (91–3947),

Emma Detillion and Sheila Lawson, Intervenor Plaintiffs–Appellees/Cross–Appellants (91–3947),

v.

Edward R. MADIGAN (91–3913), Terry A. Wallace (91–3946), and John J. Witkosky (91–3912), in their official capacities, Defendants–Appellants/Cross–Appellees.

Nos. 91–3912, 91–3913, 91–3946 and 91–3947.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 8, 1992.

Decided Nov. 16, 1992.

Peter M. Iskin (argued and briefed), Robert H. Bonthius, Jr., Legal Aid Society of Cleveland, Cleveland, Ohio, for Robin Baum, Emma Detillion and Sheila Lawson.

Michael Anne Johnson, Alexander A. Rokakis and Kathleen A. Sutula, Asst. U.S. Attys., Cleveland, Ohio, Christine N. Kohl (argued and briefed), Barbara C. Biddle, U.S. Dept. of Justice, Civil Div., Appellate Staff, Washington, D.C., for Edward R. Madigan.

Kent M. Graham, David W. Norris, Roxana R. Lyle (briefed), Pros. Attorney's Office, for the County of Portage, Ravenna, Ohio, for John J. Witkosky.

Alan Schwepe (argued and briefed), Columbus, Ohio, for Terry A. Wallace.

Before: MILBURN and NORRIS, Circuit Judges; and LIVELY, Senior Circuit Judge.

MILBURN, Circuit Judge.

Defendants Edward R. Madigan, Secretary of the United States Department of Agriculture; Terry A. Wallace, Director of the Ohio Department of Human Services; and John J. Witkosky, Administrator of the Portage County Department of Human Services, appeal from the district court's decision granting summary judgment to plaintiffs Robin Baum, Emma Detillion, and Sheila Lawson on their claim that the utility reimbursements paid directly to them by check did not constitute income for purposes of calculating their food stamp benefits under the Food Stamp Act, 7 U.S.C. § 2011 *et seq.* Plaintiffs cross-appeal from the district court's decision insofar as it denied them summary judgment on their claims for a retroactive award of food stamp benefits and for class certification under Federal Rule of Civil Procedure 23.

The issue presented by defendants' appeal is whether the utility reimbursement payments plaintiffs received through cer-

tain federally assisted low income housing programs are excluded from income under 7 U.S.C. § 2014(d)(1) for the purpose of calculating plaintiffs' eligibility for food stamp benefits. The issues presented by plaintiffs' cross-appeal are (1) whether plaintiffs are entitled to retroactive relief under 7 U.S.C. §§ 2020(p) and 2023(b), and (2) whether plaintiffs are entitled to class certification under Fed.R.Civ.P. 23. This is a case of first impression in this circuit. For the reasons that follow, we reverse and remand.

### I.

The facts are not in dispute. Plaintiffs are public housing tenants and food stamp recipients. The United States Housing Act ("USHA"), 42 U.S.C. §§ 1437–1437j, provides low income families with rental units in facilities operated by public housing agencies ("PHA"). The Brooke Amendment to the USHA, 42 U.S.C. § 1437a(a)(1), sets the rent for a tenant in a public housing facility at approximately thirty percent of the household's monthly adjusted income.

In many public housing facilities, utility usage is not metered at the individual household level, and the PHA pays the utility charges on behalf of all the tenants. The tenant in such a facility makes only a rent payment to the landlord, and that payment covers both rent and utilities. In other public housing facilities, however, the Department of Housing and Urban Development ("HUD") requires individual metering at each household to encourage the conservation of energy. Where households are individually metered, utilities may be paid for by one of two methods. Under the first method, the PHA pays the supplier for utilities and surcharges the tenant to the extent that the tenant's utility usage exceeds a preset allowance considered reasonable by the PHA. Under the second method, the tenant is responsible for purchasing utility services directly from the supplier. The PHA sets a utility allowance ("UA") by estimating "the monthly cost of a reasonable consumption of such utilities and other services for the [tenant] unit by an energy-conservative household of modest circumstances consistent with the requirements of a safe, sanitary, and healthful living environment." 24 C.F.R. § 913.-102.

In the latter case in which the tenant purchases utilities directly, the amount of the UA is credited to the tenant's rent with the result that the tenant actually pays the PHA only the difference between the rent and the UA. For example, under the Brooke Amendment a household with an adjusted monthly income of $500.00 would be charged $150.00 rent (thirty percent of adjusted monthly income). If the UA for that household in that area were $100.00, the tenant would pay the PHA only $50.00 in rent, which is the difference between the rent and the UA.

At times, however, the UA may be greater than the rent. For example, a household with a monthly income of $250.00 would theoretically owe rent of $75.00. If the UA were $100.00, the UA would exceed the rent by $25.00. Under these circumstances, the UA would be credited to the rent, thus extinguishing that obligation, and the tenant would receive a utility reimbursement ("UR") of $25.00 in the form of a check made payable to the tenant.[1] *See* 24 C.F.R. § 913.102. Whether or not the UA exceeds a tenant's Brooke Amendment rent, the tenant is responsible for paying the household's utility bills. If the household conserves energy, it may profit to the extent that the UR exceeds the household's actual utility charges because tenants are not legally required to use the UR in payment of utility charges, and they may lawfully spend the money as they please.

---

**1.** In schematic form, the examples used are as follows:

| | Families | |
| --- | --- | --- |
| | Jones | Smith |
| Adjusted monthly income ("AMI") | $500 | $250 |
| Total tenant payment (30% of AMI) | 150 | 75 |
| Utility allowance | −100 | −100 |
| | 50 | (−25) |
| Brooke Amendment rent | $ 50 | $ 0 |
| Utility reimbursement payment | 0 | 25 |

The other government program involved in this case is the food stamp program established by the Food Stamp Act, 7 U.S.C. § 2011 *et seq*. State agencies administer the program on behalf of the Secretary of Agriculture ("Secretary") and are reimbursed approximately fifty percent of their administrative costs. The amount of food stamps to which a household is entitled is determined by the household's income: the lower the income, the greater the benefits. Household income is defined in 7 U.S.C. § 2014(d) to include "all income from whatever source...." There are sixteen exclusions from income under this statute, the first of which provides for the exclusion of "any gain or benefit which is not in the form of money payable directly to a household...." [2]

In regulations promulgated to implement the Food Stamp Act, the Secretary of Agriculture has provided that "[a]ny gain or benefit which is not in the form of money payable directly to the household, including nonmonetary or in-kind benefits, such as meals, clothing, public housing, or produce from a garden, and vendor payments," is excluded from income. 7 C.F.R. § 273.9(c)(1). "Vendor payments" are defined as "[m]oney payments that are not payable directly to a household, but are paid to a third party for a household expense...." *Id*. The regulations also provide, however, that "[p]ayments in money that are not made to a third party, but are made directly to the household, are counted as income and are not excluded as a vendor payment...." 7 C.F.R. § 273.9(c)(1)(iii).

Plaintiffs reside in federally assisted housing in Portage and Pike Counties, Ohio. Their rental units have individual metering for certain utilities which they purchase directly from the supplier. They are therefore entitled to a utility allowance under HUD regulations. The plaintiffs receive monthly utility reimbursements in the form of checks made payable to them because their Brooke Amendment rent (thirty percent of adjusted monthly income) is less than the set UA. Plaintiffs also receive food stamps, but because the Secretary of Agriculture counts plaintiffs' URs as household income, they receive fewer food stamps than they would if the URs were not counted as income.

In their complaints, plaintiffs claimed that this practice violated three different provisions of the Food Stamp Act, 7 U.S.C. §§ 2014(d)(1), 2014(d)(5), and 2014(d)(6). They also alleged violations of the United States Housing Act, the Administrative Procedure Act, and the equal protection guarantees of the Fifth and Fourteenth Amendments to the United States Constitution. On cross-motions for summary judgment, the district court concluded that the Secretary's practice of counting URs as income violated 7 U.S.C. § 2014(d)(1). [3] It prohibited the Secretary from counting as income that portion of a UR allocable to the payment of actual utility expenses, and it ordered the Secretary to estimate the household's utility expenses for the purpose of determining income. The district court did not address any of the other claims raised by plaintiffs, and those are not now before this court.

The district court also ruled that plaintiffs were not entitled to an award of retroactive benefits because the Eleventh Amendment barred such an award against the state and county defendants. As to the Secretary of Agriculture, the district court held that "7 U.S.C. § 2023(b) does not specifically require an award of retroactive benefits but limits the amount of an award if the Court concludes that a retroactive award is appropriate." J.A. 93. The court determined that such an award was not appropriate because the goal of the food stamp program—to enable lower income families to obtain a nutritionally adequate diet—could not be accomplished by a retroactive award that might benefit persons who no longer needed assistance. The court also denied plaintiffs' motion for

---

**2.** 7 U.S.C. § 2014(d)(1) provides:

Household income for purposes of the food stamp program shall include all income from whatever source excluding only (1) any gain or benefit which is not in the form of money payable directly to a household....

**3.** The district court's opinion is published at 750 F.Supp. 845 (N.D.Ohio, 1990).

class certification because no useful purpose could be served by certification, and the putative members of the class would receive the benefits of the court's prospective declaratory and injunctive relief whether they were members of a class or not. These timely appeals followed.

## II.

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. There are no disputed issues of fact in this case, and the district court's grant of summary judgment is reviewed de novo. *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1473 (6th Cir.), *cert. denied*, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988).

The Secretary argued in the district court that 7 U.S.C. § 2014(d)(1) was unambiguous and that the language, "any gain of benefit which is not in the form of money payable directly to a household ...," required no interpretation or resort to legislative history. The Secretary contended that the statute provides that any benefit in the form of money payable directly to a household *is* included income for the purposes of food stamp certification.

The district court, however, held that "the plain language of the statute is somewhat ambiguous," J.A. 74, because "the statute's plain language does not resolve the issue of what constitutes a direct payment of a gain or benefit," J.A. 75, and it rejected the Secretary's reading of the statute because it began and ended "with the fact that plaintiffs receive a gain or benefit in the form of a monetary payment paid to the household." J.A. 74. Thus, the district court apparently accepted plaintiffs' argument that the plain language of the statute could reasonably be read to exclude from income any payments made to households for the *purpose* of reimbursing them for utility expenditures. It concluded that the Secretary had failed to "explain how a reimbursement check is a benefit 'payable directly' to the household given the fact that plaintiffs are being reimbursed for utility expenses." J.A. 77. Thus, the district court discounted the term "form" in the statute and laid emphasis instead on the language, "payable directly to the household." The district court concluded that an ambiguity existed in the "payable directly" language of the statute and proceeded to a study of legislative history in order to determine congressional intent.

The first rule of statutory interpretation is that "[t]here is ... no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes." *United States v. American Trucking Ass'ns, Inc.*, 310 U.S. 534, 543, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940). In the most noteworthy exposition of this principle, the Supreme Court stated:

> Where the language is plain and admits of no more than one meaning, *the duty of interpretation does not arise,* and the rules which are to aid doubtful meanings need no discussion....
>
> Statutory words are uniformly presumed, unless the contrary appears, to be used in their ordinary and usual sense, and with the meaning commonly attributed to them.

*Caminetti v. United States*, 242 U.S. 470, 485–86, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1916) (emphasis added). As this court has held, "[i]t is an elementary rule of statutory construction that we initially look to the plain language of the statute to determine the meaning of the legislation." *McBarron v. S & T Indus., Inc.*, 771 F.2d 94, 97 (6th Cir.1985); *accord Bradley v. Austin*, 841 F.2d 1288, 1293 (6th Cir.1988).

The language "directly payable to a household" is ordinary language free of legal art. It comprehends monetary payments made "straight to" a household, and it naturally excludes payments made to others for the benefit of that household. Moreover, the distinction seems to have been the central purpose of the language employed. The statute provides that any benefit in the *"form* of money payable directly to a household" (emphasis added) is to be included in income. It does not mention the purpose, intent, or ultimate

destination of such a payment as factors bearing on the question of its inclusion in income.

In *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 570, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982), the Supreme Court held that a court's

task is to give effect to the will of Congress, and when its will has been expressed *in reasonably plain terms*, "that language must ordinarily be regarded as *conclusive*."

(Citation omitted, emphasis added). The terms of 7 U.S.C. § 2014(d)(1) are "reasonably plain" in their emphasis on the *form* of the payment as the determinant of its inclusion or exclusion. The terms of the pertinent statutory provision do not mention, or even imply, that the *purpose* of a payment should be considered. Thus, we conclude that the statute is not ambiguous, and we hold that it must be enforced according to its plain terms.

One other circuit court has reached a similar conclusion. In *Ruhe v. Bergland*, 683 F.2d 102 (4th Cir.1982) (per curiam), the Fourth Circuit considered whether housing subsidies paid directly to householders by Arlington County, Virginia, should be counted as income under 7 U.S.C. § 2014(d)(1). In warning against strained constructions of plain statutory language, the Fourth Circuit held that the language of the statute required inclusion of the county subsidy payments in the householders' income for food stamp purposes, and it specifically rejected the argument that such a construction would produce absurd or unreasonable results.

Furthermore, we must disagree with plaintiffs that reliance on legislative history is appropriate because interpretation of the statutory language alone would lead to absurd or unreasonable results. Differentiation between those subsidy programs with third party payments and those with direct payments has reasonable basis. The differentiation arises from the household's control of cash, and the consequent possibility of diversion, in one case, and the total lack of control in the other. There is no stat-utory requirement in the Arlington County program that the participant actually spend the proceeds of the subsidy on housing. With the Section 8 program, the beneficiary has no such discretion. Similarly, the regulation does not appear to conflict with the overall purposes of the Food Stamp program so as to produce an absurd situation. While there is broad statutory language that the purpose of the Food Stamp program is to "alleviate hunger and malnutrition," 7 U.S.C. § 2011, it cannot be said that the statutory language requiring that household income include "all income from whatever source," conflicts with the goals of the program. *Id.* § 2014(d).

*Id.* at 105 (citations omitted). Thus, the Fourth Circuit likewise did not find 7 U.S.C. § 2014(d)(1) to be ambiguous.

In the present case, after finding that the statute was ambiguous, the district court looked into its legislative history and concluded that

the statutory language plus the available evidence of congressional intent leads the Court to conclude that Congress intended to exclude the utilities reimbursement payment to the extent that the reimbursement represents actual utilities expenses incurred by the plaintiffs.

J.A. 77. The district court found the congressional expression of this intent to be that contained in the House Report to the Food Stamp Act of 1977, H.R.Rep. No. 95–464, 95th Cong., 1st Sess. 32 (1977) *reprinted in* 1977 U.S.Code Cong. & Admin.News 1704, 1971, 1998–2011 ("House Report"): "No rent subsidies or supplements paid or payable to third parties could be treated as income, including sums paid to households under firm instructions for their transmission to landlords." *Id.* at 32, *reprinted at* 2008. It then concluded that the Secretary had "misconstrue[d] the phrase 'any gain or benefit which is not in the form of money payable directly to a household' in that a reimbursement payment is not payable 'directly' to the plaintiffs. Plaintiffs are *paid back*, not paid directly...." J.A. 82 (emphasis in original). Thus, the district court accepted

plaintiffs' argument that the URs fall within the language used in the House Report because tenants are obligated by their public housing leases to pay their utilities and may suffer eviction if they fail to do so. That, plaintiffs argue, is the equivalent of "firm instructions."

Defendants, on the other hand, point out that the URs are paid directly to tenants without conditions attached to their uses. *See Larry v. Yamauchi*, 753 F.Supp. 784, 801–02 (E.D.Ark.1990) (no law or regulation requires tenants to use URs for payment of utility bills). Further, even the HUD regulations governing a tenant's obligations do not require any particular use for URs. 24 C.F.R. § 966.4(f).

Significantly, the "firm instructions" language used in the House Report is nowhere mentioned in the statute. Had it been included in the statute, it might be plausibly argued that the statute had been reconfigured from one based solely on the *form* of the payment to one based on the *purpose* of the payment or its intended ultimate destination. But if, as plaintiffs concede, Congress was "fully aware" that federal rent subsidies, including URs, were sometimes paid directly to households (Opening Brief of Plaintiffs–Appellees at 30, 33), we are left with the question of why Congress did not carry out its supposed intent by using the language of the House Report in the statute itself.[4]

The district court concluded that the Secretary's reading of the statute produced unreasonable results in the distribution of food stamps. However,

> [j]udicial perception that a particular result would be unreasonable may enter into the construction of *ambiguous* provisions, but cannot justify disregard of what Congress has plainly and intentionally provided.

*Commissioner v. Asphalt Prods. Co.*, 482 U.S. 117, 121, 107 S.Ct. 2275, 2278, 96 L.Ed.2d 97 (1987) (summary reversal) (emphasis added). Thus, we reiterate, 7 U.S.C. § 2014(d)(1) is not ambiguous and is not rendered so by its legislative history. Accordingly, it was error for the district court to insert a limitation which altered the statute from one conditioned on the form of the payment to one conditioned on its purpose.

> Although the spirit of the instrument ... is to be respected not less than its letter yet the spirit is to be collected chiefly from its words. It would be dangerous in the extreme to infer from extrinsic circumstances that a case for which the words of the instrument expressly provided shall be exempt from its operation.... [I]n most cases, the plain meaning of a provision not contradicted by any other provision in the same instrument, is not to be disregarded because we believe the framers of the instrument could not intend what they say.

*Sturges . v. Crowninshield*, 17 U.S. (4 Wheat.) 122, 202, 4 L.Ed. 529 (1819).

We note also that the Secretary of Agriculture has published regulations, 7 C.F.R. § 273.9, interpreting 7 U.S.C. 2014(d)(1) to require that URs be counted as income in cases such as this. Thus, even if we believed the statute to be ambiguous, we would accord considerable deference to the Secretary's interpretation of it. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).

### III.

For the reasons stated, the judgment of the district court is REVERSED, and this case is REMANDED with instructions to enter judgment for the defendants on the ground that 7 U.S.C. § 2014(d)(1) does not exclude the utility reimbursements in this case from income for purposes of the Food Stamp Program. Our holding renders it unnecessary for us to review the issues raised in the cross-appeal concerning retroactivity of benefits and class status as such must await the district court's deci-

---

**4.** The court in *Ruhe v. Bergland*, 683 F.2d at 104, also rejected a similar argument based on this language of the House Report.

sion on plaintiffs' remaining claims in this case.[5]

---

**5.** See footnote 6 to the district court's memorandum opinion issued June 29, 1990, and published at 750 F.Supp. 845 (N.D.Ohio 1990).