**Paul and Regina TERRY, Plaintiffs,**

**v.**

**COMMUNITY BANK OF NORTHERN VIRGINIA; GMAC–Residential Funding Corporation; Equityplus Financial, Inc.; Equityplus, LLC, Equity Guaranty, LLC; Title America, LLC; and Guaranty National Bank of Tallahassee, Defendants.**

No. 02–2534.

United States District Court,
W.D. Tennessee,
Western Division.

March 25, 2003.

Lee J. Bloomfield, Allen Godwin Morris Laurenzi & Bloomfield, P.C., Memphis, TN, A. Hoyt Rowell, III, Fred Thompson, Daniel O. Myers, Kevin L. Oufnac, Ness Motley Loadholt Richardson & Poole, Mount Pleasant, SC, Eric G. Calhoun, Lawson & Fields, PC, Dallas, TX, for Paul Terry, on behalf of himself and of all other persons similarly situated, Regina Terry, on behalf of herself and of all other persons similarly situated, plaintiffs.

Kemper B. Durand, Thomason Hendrix Harvey Johnson & Mitchell, Memphis, TN, F. Douglas Ross, Odin Feldman & Pittleman, PC, Fairfax, VA, for Community Bank of Northern Virginia.

W.J. Michael Cody, Jonathan P. Lakey, Burch Porter & Johnson, Memphis, TN, Samuel L. Crain, Jr., Burch Porter & Johnson, Memphis, TN, Joseph A. Ingrisano, Jeffrey S. Jacobovitz, Kutak Rock LLP, Washington, DC, Cyrus Benson, III, White & Case, LLP, New York, NY, Rick Solum, Patrick J. McLaughlin, Dorsey & Whitney LLP, Minneapolis, MN, for FirstPlus Home Loan Trust 1996-2, FirstPlus Home Loan Owner Trust 1996-3, Firstplus Home Owner Loan Trust 1996–4, Firstplus Home Loan Owner Trust 1997–1, Firstplus Home Loan Owner Trust 1997–2, Firstplus Home Loan Owner Trust 1997–3, Firstplus Home Loan Owner Trust 1997–4, Firstplus Home Loan Owner Trust 1998–1, Firstplus Home Loan Owner Trust 1998–2, Firstplus Home Loan Owner Trust 1998–3, Firstplus Home Loan Owner Trust 1998–4, Firstplus Home Loan Owner Trust 1998–5, U.S. Bank National Association, ND, Empire Funding Home Loan Owner Trust 1997–1, Empire Funding Home Loan Owner Trust 1997–2, Empire Funding Home Loan Owner Trust 1997–3, Empire Funding Home Loan Owner Trust 1997–4, Empire Funding Home Loan Owner Trust 1998–1, Empire Funding Home Loan Owner Trust 1998–2, Empire Funding Home Loan Owner Trust 1998–3, Empire Funding Home Loan Owner Trust 1999–1, Irwin Union Bank & Trust, Amaximis Lending, L.P., Household Finance Corp., GRMT Mortgage Loan Trust 2002-1, Real Time Resolutions, Inc., German American Capital Corp., Ace Securities Corporate Home Loan Trust 1999 A

John B. Starnes, Baker Donelson Bearman & Caldwell, Memphis, TN, John C. Speer, Bass Berry & Sims PLC, Memphis, TN, Thomas L. Allen, Roy W. Arnold, Mary J. Hackett, Laurie Arnold, Reed Smith LLP, Pittsburgh, PA, for GMAC-Residential Funding Corp., Sovereign Bank.

John A. Irvine, Jr., Robert L. Crawford, Wyatt Tarrant & Combs, Memphis, TN, for Banc One Corp.

John J. Heflin, III, Kenneth P. Jones, Bourland Heflin Alarez & Minor, Memphis, TN, F. Thomas Eck, IV, The Eck Law Firm, Chantilly, VA, for EquityPlus Financial, Inc.

Michael I. Less, Elizabeth B. Stengel, Less Getz & Lipman, Memphis, TN, Pamela M. Conover, Ward B. Coe, III, Whiteford Taylor & Preston, Baltimore, MD, for PB Reit, Inc., PB Investment Corp.

Scott T. Beall, Shepherd D. Tate, Michael A. Brady, Tate Lazarini & Beall, PLC, Memphis, TN, Sheldon Zenner, David Stagman, Katten Muchin & Zavis, Chicago, IL, for UBS Warburg Real Estate Securities, Inc.

F. Thomas Eck, IV, The Eck Law Firm, Chantilly, VA, for EquityPlus Guaranty, LLC.

Earle J. Schwarz, Glankler Brown, PLLC, Memphis, TN, Edward A. Dean, Thomas P. Oldweiler, Armbrecht Jackson LLP, Mobile, AL, for Guaranty National Bank of Tallahassee.

**ORDER GRANTING DEFENDANT GMAC–RESIDENTIAL FUNDING CORPORATION'S MOTIONS TO DISMISS PLAINTIFFS' COMPLAINT (Dkt # 60) AND PLAINTIFFS' AMENDED COMPLAINT (Dkt # 112)**

DONALD, District Judge.

This matter is before the Court on the motion of Defendant GMAC–Residential Funding Corporation ("RFC") to dismiss Plaintiffs Paul and Regina Terry's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] The amended complaint alleges violations of Tennessee Code Annotated Sections 47–14–102, 47–14–103, 47–14–112, 47–14–113, 47–14–117, 47–15–103 and 47–15–104, the Rules of the Tennessee Department of Financial Institutions, chapter 0180–17, the Tennessee Consumer Protection Act, Tennessee Code Annotated Section 47–18–101, *et seq,* and common law claims of illegal contract and civil conspiracy. Specifically, Plaintiffs allege that RFC is liable to Plaintiffs as an assignee of loans originated by lenders who acted unlawfully in connection with charges, costs and interest assessed in the issuance of loans secured by Plaintiffs' home. RFC asserts that the amended complaint fails to state a claim as a matter of law because: (1) Plaintiffs' loans do not qualify as "high cost" loans under the Home Ownership and Equity Protection Act of 1994 ("HOEPA"); (2) federal law preempts Tennessee law with respect to the loans at issue in this case, making Virginia and/or Florida law the correct choice of law, neither of which make the lenders' conduct unlawful; and (3) even if Tennessee law does apply, (a) the interest rates charged on the loans are not excessive, (b) the claims are time-barred, (c) the Tennessee usury statute is Plaintiffs' exclusive remedy, (d) the complaint does not comply with Fed.R.Civ.P. 9(b), (e) voiding Plaintiffs' loans would be an improper remedy, and (f) Plaintiffs have not complied with the statutory prerequisites for equitable relief.

The Court has jurisdiction pursuant to 28 U.S.C. § 1332. For the following reasons, the Court GRANTS RFC's motions to dismiss.

**I. Procedural History**

This case was removed to the United States District Court for the Western District of Tennessee from the Shelby County Circuit Court of Tennessee on July 3, 2002. In addition to RFC, the original complaint named as defendants: Community Bank of Northern Virginia ("CBNV"); Firstplus Home Loan Trust 1996–2; Firstplus Home Loan Owner Trust 1996–3; Firstplus Home Owner Loan Trust 1996–4; Firstplus Home Loan Owner Trust 1997–1; Firstplus Home Loan Owner Trust 1997–2; Firstplus Home Loan Owner Trust 1997–3; Firstplus Home Loan Owner Trust 1997–4; Firstplus Home Loan Owner Trust 1998–1; Firstplus Home Loan Trust 1998–2; Firstplus Home Loan Owner Trust 1998–3; Firstplus Home Loan Owner Trust 1998–4; Firstplus Home Loan Owner Trust 1998–5; US Bank National, Association, N.D.; Sovereign Bank; Banc One Corp.; Empire Funding Home Loan Owner Trust 1997–1; Empire Funding Home Loan Owner Trust 1997–2; Empire Funding Home Loan Owner Trust 1997–3; Empire Funding Home Loan Owner Trust 1997–4; Empire

---

1. Plaintiffs' original complaint was removed to this Court on July 3, 2002, and Plaintiffs filed an amended complaint on December 17, 2002. RFC filed a motion to dismiss the original complaint on August 9, 2002, and moved to dismiss the amended complaint on December 13, 2002. Because the amended complaint raises no new causes of action, this Order addresses only the amended complaint, but disposes of both of RFC's motions to dismiss, Dkt # s 60 and 112.

Funding Home Loan Owner Trust 1998–1; Empire Funding Home Loan Owner Trust 1998–2; Empire Funding Home Loan Owner Trust 1998–3; Empire Funding Home Loan Owner Trust 1999–1; Irwin Union Bank & Trust; EquityPlus Financial, Inc. ("EPF"); Amaximis Lending, LP; Household Finance Corp.; GRMT Mortgage Loan Trust 2001–1; PB Reit, Inc.; PB Investment Corp.; Real Time Resolutions; UBS Warburg Real Estate Securities f/k/a Paine Webber Real Estate Securities, Inc.; German American Capital Corporation; Ace Securities Corporate Home Loan Trust 1999 A; and Equity-Plus, LLC.

On August 9, 2002, RFC moved to dismiss the original complaint. On September 30, 2002, the Court dismissed with prejudice the claims against all defendants except for RFC, CBNV and EPF. *See* Agreed Order Granting Defs.' Mot. to Dismiss, filed September 30, 2002. On October 15, 2002, Plaintiffs filed a consolidated response to RFC and CBNV's motions to dismiss. In November 2002, Plaintiffs moved, and the Court granted leave, to amend the complaint. On December 17, 2002, Plaintiffs filed a first amended class action complaint. The amended complaint alleges the same causes of action and adds Guaranty National Bank of Tallahassee ("GNBT"), Equity Guaranty, LLC, and Title America, LLC as defendants. RFC moved to dismiss the amended complaint on December 13, 2002 and filed its memorandum in support thereof on December 18, 2002. Plaintiffs filed a consolidated response to RFC and CBNV's motions to dismiss the amended complaint on January 27, 2003.

## II. Factual Background [2]

On May 28, 1998, Plaintiffs obtained a second mortgage home equity loan ("1998 loan"). The 1998 loan documents state that the 1998 loan was originated by CBNV and brokered by EPF. The principal amount of the 1998 loan was $28,100, which was subject to an interest rate of 19.859%. The term of the 1998 loan was twenty years, with the last payment scheduled for September 4, 2019. The HUD–1 Settlement Statement indicated that the 1998 loan included the following costs and fees which were to be paid to CBNV: a $2,248 loan origination fee, an $843 loan discount fee, and a $95 application fee. The following charges were to be paid to Title America: a $295 settlement or closing fee, a $300 title search or abstract fee, a $300 title exam fee; a $25 overnight fee, and a $250 document review fee. These origination and title fees were added to the principal of the loan, requiring Plaintiffs to pay nothing at the closing. The fees were included as a part of Plaintiffs' monthly payments. RFC customarily made purchase pledges or commitments relating to loans it purchased from banks and brokers prior to the actual settlement or closing of the loan. RFC had a pre-purchase agreement to buy Plaintiffs' 1998 loan before it closed, and immediately after the 1998 loan closed, the 1998 loan was sold to RFC. Thereafter, RFC collected monthly payments from Plaintiffs.

On May 31, 1999, Plaintiffs refinanced the 1998 loan by securing a third mortgage home equity loan ("1999 loan"). The loan documents state that the 1999 loan was originated by GNBT and brokered by Equity Guaranty, LLC. The principal amount of the 1999 loan was $57,000, which was subject to an interest rate of 15.971%. The term of the 1999 loan was fifteen years, with the last payment scheduled on June 6, 2015. The HUD–1 Settlement Statement indicated that the 1999 loan included the following costs and fees which were to be paid to GBNT: a $5,700 loan origination

---

**2.** The following statement of facts is taken     from Plaintiffs' amended complaint.

fee, a $1,140 loan discount fee, a $95 application fee, and a $185 underwriting fee. The following charges were to be paid to Title America: a $200 settlement or closing fee, a $115 title search or abstract fee, a $300 title exam fee, a $25 overnight fee, a $260 document review fee, a $250 processing fee, and a $94.25 recording fee. These origination and title fees were added to the principal of the loan, requiring Plaintiffs to pay nothing at the closing. The fees were included as a part of Plaintiffs' monthly payments. Immediately after the 1999 loan closed, it was sold to RFC pursuant to a pre-purchase agreement. Thereafter, RFC collected monthly payments from Plaintiffs.

## II. Legal Standard

A party may bring a motion to dismiss for failure to state a claim under Fed. R.Civ.P. 12(b)(6). This motion only tests whether a cognizable claim has been pleaded in the complaint. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988). Essentially, it allows the court to dismiss meritless cases which would otherwise waste judicial resources and result in unnecessary discovery. *See, e.g., Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

To determine whether a motion to dismiss should be granted, the court must first examine the complaint. The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). What the complaint must do is provide the defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir.1976). In reviewing the complaint, the court must accept as true all factual allegations in the complaint and construe them in the light most favor-

able to the plaintiff. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983). Indeed, the facts as alleged by the plaintiff cannot be disbelieved by the court. *Neitzke*, 490 U.S. at 327, 109 S.Ct. 1827; *Murphy v. Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir.1997). Where there are conflicting interpretations of the facts, they must be construed in the plaintiff's favor. *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1039–40 (6th Cir.1991). However, legal conclusions or unwarranted factual inferences should not be accepted as true. *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 405–406 (6th Cir.1998).

The Supreme Court has held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99; *see also Neitzke*, 490 U.S. at 326–27, 109 S.Ct. 1827; *Lewis*, 135 F.3d at 405. Thus, the standard to be applied when evaluating a motion to dismiss for failure to state a claim is very liberal in favor of the party opposing the motion. *Westlake*, 537 F.2d at 858. Even if the plaintiff's chances of success are remote or unlikely, a motion to dismiss should be denied. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

## III. Analysis

RFC asserts that because Plaintiffs' loans do not qualify as "high cost" loans, it cannot be liable to Plaintiffs. The Court agrees. Under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq*, assignees of loans may be civilly liable for any violation of the TILA which may be maintained against a creditor. 15 U.S.C. § 1641(a). In 1994, the TILA was amended to define what types of mortgage loans qualify for protection under the TILA. The

1994 amendments are commonly referred to as the HOEPA amendments. A mortgage is a "high cost" loan covered by the HOEPA if the

> (aa)(1) mortgage refer[s] to ... a consumer credit transaction that is secured by the consumer's principal dwelling ..., [and] if (A) the annual percentage rate at the consummation of the transaction will exceed by more than 10 percentage points the yield on Treasury securities having comparable periods of maturity on the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor; or (B) the total points and fees *payable by the consumer at or before closing* will exceed the greater of—(i) 8 percent of the total loan amount; or (ii) $400.

15 U.S.C. § 1602(aa)(1)(A-B) (emphasis added). The issue in this case is whether Plaintiffs qualify as holders of "high cost" loans under the HOEPA in light of their admission that they "paid nothing at the closing" of their loans.[3] Compl. at ¶¶ 88, 104. This question of statutory interpretation is one of first impression, and the Court finds that it must be answered in the negative.

The first step in resolving statutory construction questions " 'is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.' " *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002) (internal citations omitted). In fact, where the language of the statute cannot express more than one meaning, " *'the duty of interpretation does not arise.' " Baum v. Madigan*, 979 F.2d

438 (6th Cir.1992) (*citing Caminetti v. U.S.*, 242 U.S. 470, 485–486, 37 S.Ct. 192, 61 L.Ed. 442 (1917)) (emphasis in original). Title 15 U.S.C. § 1602(aa)(1) plainly states that unless a mortgage satisfies § 1602(aa)(1)(A), the loan qualifies for TILA protections only if "the total points and fees *payable* by the consumer *at or before closing* " meet a certain threshold amount. 15 U.S.C. § 1602(aa)(1)(B) (emphasis added). There have been no allegations that Plaintiffs' loans are covered by § 1602(aa)(1)(A). Thus, for RFC to be liable, Plaintiffs must meet the criteria stated in § 1602(aa)(1)(B).

Black's Law Dictionary defines "payable" as follows:

> Capable of being paid; suitable to be paid; admitting or demanding payment; justly due; legally enforceable. A sum of money is said to be payable when a person is under an obligation to pay it. Payable may therefore signify an obligation to pay at a future time, but, *when used without qualification, [the] term normally means that the debt is payable at once,* as opposed to owing.

Black's Law Dictionary 1016 (6th ed.1979) (emphasis added). Under this definition, even if the time for payment of points and fees on a "high cost" loan was unspecified, the points and fees would be "payable at once," as opposed to over the course of a loan. However, Congress specifically qualified the term "payable" with a time certain—i.e. the points and fees must be payable "at or before closing." 15 U.S.C. § 1602(aa)(1)(B). There is nothing ambiguous about the language of § 1602(aa)(1)(B) which lends to another interpretation of this statute. According-

---

**3.** Plaintiffs made no allegations that the interest rates on either of the loans exceed "by more than 10 percentage points the yield on Treasury securities having comparable periods of maturity on the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor." 15 U.S.C. § 1602(aa)(1)(A).

ly, the Court finds that a mortgage qualifies for TILA protections only where the mortgagor is required to pay certain points and fees at or before closing of a loan, not over the course of the loan.

In the instant case, Plaintiffs admit that they "paid nothing at the closing." Compl. at ¶¶ 88, 104. Thus, Plaintiffs' loans do not qualify as "high cost" HOEPA loans. Therefore, RFC, whose liability is predicated solely on its status as an assignee of allegedly "high cost" HOEPA loans pursuant to the TILA, cannot be liable to Plaintiffs for claims based on the allegedly improper acts of Plaintiffs' creditors. Accordingly, the Court GRANTS RFC's motions to dismiss.

## IV. Conclusion

For the foregoing reasons, RFC's motions to dismiss (Dkt # s 60 and 112) are GRANTED.