**In re Ethel Lee SIGLE.**

**Ethel Lee Sigle, Plaintiff,**

v.

**Canton Home Improvement, Delta Funding Corporation, and Countrywide Home Loans, Inc., Defendants.**

**Bankruptcy No. 02–14265.**

**Adversary No. 02–1164.**

United States Bankruptcy Court, N.D. Mississippi.

May 18, 2004.

W.M. Sanders, North MS Rural Legal Services, Clarksdale, MS, Ruby White, Oxford, MS, for Plaintiff.

Emily K. Courteau, Monroe, LA, Daniel J. Mulholland, Forman, Perry, Watkins & Krutz, Roland M. Slover, Jackson, MS, Guy N. Rogers, Jr., Pearl, MS, Albert Bozeman White, Madison, MS, for Defendants.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court is the motion to dismiss the above captioned adversary proceeding filed by the defendant, Countrywide Home Loans, Inc., (Countrywide); response filed thereto by the plaintiff/debtor, Ethel Lee Sigle; and the court, having heard and considered same, hereby finds as follows, to-wit:

### I.

The court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157, as well as, the General Order of Reference issued by the United States District Court for the Northern District of Mississippi on July 27, 1984. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A) and (O).

### II.

For purposes of the subject motion to dismiss, the relevant factual events are limited to the terms and conditions of a loan extended to the plaintiff, Sigle, by the defendant, Delta Funding Corporation (Delta). The parties and the details of the transaction are set forth as follows:

| | |
|---|---|
| Borrower– | Ethel Lee Sigle |
| Lender– | Delta Funding Corporation |
| Settlement Agent– | Prestige Title, Inc. |
| Closing Date– | July 31, 2000 |
| Loan Amount– | $25,900.00 |
| Mortgage Broker– | The Hurricane Company |

From a review of the evidence presented, the court finds that the following costs

were paid at the closing of the subject loan, to-wit:

A. Charges that are includible in the HOEPA calculation:

| Description | Payee | Amount |
|---|---|---|
| Broker's Fee | Hurricane Company | $ 826.83 |
| Processing Fee | Delta | 450.00 |
| Tax Service | Delta | 76.00 |
| Flood Certificate | Delta | 20.00 |
| Closing Fee | Stephen R. Colson | 100.00 |
| Courier Fee | Stephen R. Colson | 35.00 |
| Excess Recording Fee | ($26.00–11.00) | 15.00 |
| | | $1,522.83 |

B. Charges that are excluded from the HOEPA calculation:

| Description | Payee | Amount |
|---|---|---|
| Appraisal Bright | Appraisal | $ 350.00 |
| Hazard Insurance | Ace American Insurance | 297.00 |
| Title Search Fee | Stephen R. Colson | 380.00 |
| Title Insurance Premium | First American Title Insurance | 225.00 |
| | | $1,252.00 |

C. Charges paid by the lender (Delta):

| Description | Payee | Amount |
|---|---|---|
| Broker's Compensation | Hurricane Company | $388.50 |

All of the checks that were issued at closing did not correspond precisely to the items designated on the loan closing settlement statement. The amounts, however, were the same. There was a check payable to The Crawford Law Firm in the sum of $200.00, and a check payable to MTA in the sum of $180.00. The total of these checks corresponds to the $380.00 amount that was reflected on the settlement statement as being distributed to Stephen R. Colson for the title search fee. As a result of a post-trial inquiry by the court, the attorney for Delta and Countrywide produced a letter written by Stephen R. Colson, Prestige Title, Inc., which provides the following, to-wit:

> With regard to your telephone request for an explanation of the reason we issued the $200.00 check to the Crawford Law Firm, we were told that this was to cover their fee for collection of the Canton Home Improvements balance due

from the Borrower, Ethel Sigle. That amount was not shown on the closing statement separately because it was included in the $380.00 shown on Line 1102 with the $108.00 abstract fee.

This $200.00 disbursement may well be an inappropriate payment ultimately recoverable from either Delta or Canton Home Improvement. The court is of the opinion, however, that it is not a finance charge that should be includible for purposes of the HOEPA calculation.

In addition, a check for $225.00 was issued to the Stephen R. Colson Agency rather than to First American Title Insurance, but the amount was identical to that appearing on the settlement statement as the title insurance premium. The court also concludes that this amount should not be considered as a part of the plaintiff's finance charges for purposes of the HOEPA calculation.

### III.

■ The legal issue before the court is whether the aforementioned loan qualifies for protection under the Truth in Lending Act (TILA), 15 U.S.C. § 1601, et seq., if it is a "high cost" loan as defined by the 1994 Home Ownership and Equity Protection Act (HOEPA) amendments to TILA. A mortgage loan transaction is covered by HOEPA if the:

> (aa)(1) mortgage refer[s] to … a consumer credit transaction that is secured by the consumer's principal dwelling …,[and] if (A) the annual percentage rate at the consummation of the transaction will exceed by more than 10 percentage points the yield on Treasury securities having comparable periods of maturity on the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor;

or (B) the total points and fees payable by the consumer *at or before closing* will exceed the greater of—(i) 8 percent of the total loan amount; or (ii) $400. (emphasis added)

15 U.S.C. § 1602(aa)(1)(A) and (B).

The test set forth in 15 U.S.C. § 1602(aa)(1)(A) has not been raised in this proceeding. As such, the court will focus exclusively on § 1602(aa)(1)(B)(i), the eight percent of the total loan amount test.

It is factually undisputed that $826.83 of the mortgage broker's fee, paid at closing to The Hurricane Company, was paid from funds contributed by the plaintiff. The balance of the mortgage broker's fee in the sum of $388.50 was paid to The Hurricane Company by the lender, Delta. This latter portion of the fee was to be recouped from the plaintiff by Delta through the assessment of a slightly higher interest rate to be paid over the life of the loan. It clearly was not paid "at or before closing" by the plaintiff. The question then narrows to whether the lender paid portion of the broker's fee should be included in the plaintiff's finance charges that are considered in determining whether HOEPA is applicable.

Set forth in *Terry v. Community Bank of Northern Virginia,* 255 F.Supp.2d 811 (W.D.Tenn.2003) is the following explanation, to-wit:

The first step in resolving statutory construction questions " 'is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.' " *Barnhart v. Sigmon Coal Co., Inc.,* 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002) (internal citations omitted). In fact, where the language of the statute cannot express more than one meaning. " '*the duty of interpretation does not arise.*' " *Baum v. Madigan,* 979 F.2d 438 (6th Cir.1992)

(citing *Caminetti v. U.S.,* 242 U.S. 470, 485–486, 37 S.Ct. 192, 61 L.Ed. 442 (1917)) (emphasis in original). *Title 15 U.S.C. § 1602* (aa)(1) plainly states that unless a mortgage satisfies § 1602 (aa)(1)(A), the loan qualifies for TILA protections only if "the total points and fees *payable* by the consumer *at or before closing*" meet a certain threshold amount. *15 U.S.C. § 1602* (aa)(1)(B) (emphasis added). There have been no allegations that Plaintiffs' loans are covered by *§ 1602* (aa)(1)(A). Thus, for RFC to be liable, Plaintiffs must meet the criteria stated in *§ 1602* (aa)(1)(B).

Black's Law Dictionary defines "payable" as follows:

Capable of being paid; suitable to be paid; admitting or demanding payment; justly due; legally enforceable. A sum of money is said to be payable when a person is under an obligation to pay it. Payable may therefore signify an obligation to pay at a future time, but *when used without qualification, [the] term normally means that the debt is payable at once,* as opposed to owing.

Black's Law Dictionary 1016 (6th ed.1979) (emphasis added). Under this definition, even if the time for payment of points and fees on a "high cost" loan was unspecified, the points and fees would be "payable at once," as opposed to over the course of a loan. However, Congress specifically qualified the term "payable" with a time certain—i.e. the points and fees must be payable "at or before closing." *15 U.S.C. § 1602* (aa)(1)(B). There is nothing ambiguous about the language of § 1602(aa)(1)(B) which lends to another interpretation of this statute. Accordingly, the Court finds that a mortgage qualifies for TILA protections only where the mortgagor is required to pay certain points and fees

at or before closing of a loan, not over the course of the loan.

The plaintiff relies upon the decision of *Mourer v. Equicredit Corp. of America and Cascade Capital Funding (In re Mourer)*, 287 B.R. 889 (Bankr.W.D.Mich. 2003), which reaches the opposite conclusion from *Terry* on practically identical facts. The *Mourer* court commented as follows, to-wit:

In this case, the yield spread premium is being paid by the consumer in the form of a higher interest rate. Interest is not an item that is paid up front, out of pocket at closing, but throughout the life of the loan. Consequently, Equicredit argues that because it is not mandatory that this fee be disclosed as a finance charge it should not be included in its calculation.

However, we find that by virtue of the definition of a finance charge found in § 226.4(a) and consistent with the special rule regarding mortgage broker fees in § 226.4(a)(3), the yield spread premium would be a finance charge indirectly paid by the consumer incident to the extension of credit.

We come to this conclusion primarily by looking to the spirit of the law. "Not the letter, but the spirit: for the letter killeth, but the spirit giveth life." *The Second Epistle of Paul the Apostle to the Corinthians 3:6.*

This court is persuaded by the reasoning expressed in the *Terry* opinion. While the lender's contribution to the mortgage broker's fee will obviously be more than repaid by the plaintiff over the life of the loan through the elevated interest rate, the plain meaning of the statute, i.e., "payable by the consumer at or before closing," cannot be ignored. This is the case even if the court would prefer to look to the "spirit and not the letter of the law." The *Terry* conclusion is bolstered by the fact

that legislation has been introduced, but not yet enacted, to address the indirect payment of the mortgage broker's fee. As noted in the defendants' supplemental memorandum:

"Parenthetically, Senator Paul Sarbanes recently introduced a bill (S 1928) proposing a prospective amendment to § 103(aa) of HOEPA. Specifically, the proposed change, as it relates to this matter, is to change, 'All compensation to mortgage brokers' to 'All compensation paid directly or *indirectly* by a consumer *or a creditor* to a mortgage broker,' and the terms 'payable at or before closing' to 'payable *on the transaction.*' (emphasis added)

Similarly, on March 16, 2004, a bill (HR 3974), sponsored by House Representatives Brad Miller and Melvin Watt, was introduced seeking to prospectively revise the HOEPA fees by proposing a change to subparagraph (B) to 'all compensation paid directly or *indirectly* by a consumer *or creditor* to a mortgage broker from any source …'" (emphasis added)

## IV.

The settlement statement, applicable to the Sigle transaction, reflects that $18,064.08 was paid to Canton Home Improvement. The plaintiff pointed out in her post-trial memorandum that there was a deed of trust, encumbering her property, recorded in favor of the Bank of Bolivar County, but that the amount owing was only $11,116.67. As such, the plaintiff contends that Canton Home Improvement received a "finders fee" of $6,947.41, which should be included as a finance charge.

This is an entirely new theory developed by the plaintiff after the most recent hearing. It ignores that the plaintiff voluntarily executed the settlement statement acknowledging the payment of $18,064.08 to

Canton Home Improvement. The court presumed that this was compensation for the work purportedly undertaken by Canton Home Improvement. This novel theory should not be injected into the question of whether the subject loan should be categorized as a HOEPA loan. However, if this is an improper application of the loan proceeds, the wrongful recipient, or the lender if it is at fault, may well be liable to the plaintiff for this amount as actual damages. The evidence is insufficient for the court to draw a reasonable conclusion at this time as to the underpinnings of this distribution. The court will not assume that the difference in the payment to Canton Home Improvement and the amount owed to the Bank of Bolivar County is a "finance charge."

■ The court would hasten to mention, however, that Delta, as the lender, is responsible for the conduct of its settlement agent, Stephen R. Colson, Prestige Title, Inc. If the settlement agent, who was not named as a defendant in this proceeding, made inappropriate disbursements at closing, such as the $200.00 payment to the Crawford Law Firm and the potential overpayment to Canton Home Improvement, then Delta could possibly be liable to the plaintiff for these amounts. These matters must be resolved after a trial on the merits.

## V.

The HOEPA calculation is set forth as follows:

| | |
|---|---|
| Loan Amount | $ 25,900.00 |
| Less: Allowable Finance Charges | 1,522.83 |
| Net Amount | $ 24,377.17 |
| Multiple of 8% | X .08 |
| Maximum Finance Charges | $ 1,950.17 |

As such, Countrywide's motion to dismiss is well taken, but only as to Countrywide. The loan in question is not a "high cost" HOEPA loan, and the loan documen-

tation does not reflect any apparent irregularities.

An order, consistent with this opinion, will be entered contemporaneously herewith.

This the __ day of May, 2004.