**In re Fannie Mae COLLINS.**

**Fannie Mae Collins, Plaintiff**

v.

**Canton Home Improvement, Delta Funding Corporation, and Countrywide Home Loans, Inc., Defendants.**

**Bankruptcy No. 01–17237.**
**Adv. Proc. No. 02–1010.**

United States Bankruptcy Court,
N.D. Mississippi.

May 18, 2004.

Emily K. Courteau, Monroe, LA, for Creditor.

W.M. Sanders, North Ms Rural Legal Services, Clarksdale, MS, Ruby White, Oxford, MS, for Debtor.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court is the motion to dismiss the above captioned adversary proceeding filed by the defendant, Countrywide Home Loans, Inc., (Countrywide); response filed thereto by the plaintiff/debtor, Fannie Mae Collins; and the court, having heard and considered same, hereby finds as follows, to-wit:

### I.

The court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157, as well as, the General Order of Reference issued by the United States District Court for the Northern District of Mississippi on July 27, 1984. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A) and (O).

### II.

For purposes of the subject motion to dismiss, the relevant factual events are limited to the terms and conditions of a loan extended to the plaintiff, Collins, by the defendant, Delta Funding Corporation (Delta). The parties and the details of the transaction are set forth as follows:

| | |
|---|---|
| Borrower- | Fannie Mae Collins |
| Lender- | Delta Funding Corporation |
| Settlement Agent- | Transcontinental Title Company |
| Closing Date- | October 26, 2000 |
| Loan Amount- | $22,400.00 |
| Mortgage Broker- | The Hurricane Company |

From a review of the evidence presented, the court finds that the following costs were paid at the closing of the subject loan, to-wit:

A. Charges that are includible in the HOEPA calculation:

| Description | Payee | Amount |
|---|---|---|
| Origination Fee | Hurricane Company | $ 800.00 |
| Processing Fee | Delta | 353.00 |
| Tax Service | Delta | 76.00 |
| Flood Certificate | Delta | 20.00 |
| Settlement Fee | Transcontinental Title | 100.00 |
| Courier Fee | Transcontinental Title | 60.00 |
| Excess Recording Fee | ($18.50–11.00) | 7.50 |
| | | $1,416.50 |

B. Charges that are excluded from the HOEPA calculation:

| Description | Payee | Amount |
|---|---|---|
| Appraisal | Bright Appraisal | $ 400.00 |
| Hazard Insurance | Financial Insurance | 277.20 |
| Title Search Fee | Transcontinental Title | 400.00 |
| Title Insurance Premium | Transcontinental Title | 75.00 |
| Account Payment | Capital One | 378.00 |
| | | $1,530.20 |

C. Charges paid by the lender (Delta):

| Description | Payee | Amount |
|---|---|---|
| Broker's Compensation | Hurricane Company | $ 392.00 |

There was some confusion concerning two checks that were issued by Transcontinental Title at the loan closing. These checks in the face amounts of $642.50 and $467.50, totaling $1,110.00, could not be linked precisely to the individual amounts that were set forth on the loan closing settlement statement. Following a telephone conference, conducted subsequent to the hearing, the attorney for Delta and

Countrywide offered the following explanation.

Check One:

| | |
|---|---|
| $400.00 | Title Search Fee |
| $100.00 | Settlement or closing fee |
| $ 75.00 | Title/risk premium |
| $ 60.00 | Courier Fee |
| $ 7.50 | (difference between $18.50 charged for recording fee and actual check to Clerk for $11.00) |
| $642.50 | Total Check One |

Check Two:

| | |
|---|---|
| $353.00 | Delta Funding's Processing Fee |
| $ 76.00 | Delta Funding's Tax Service |
| $ 20.00 | Delta Funding's Flood Certificate |
| $ 18.50 | Recording Fees |
| $467.50 | Total Check Two |

Because of this explanation, the court has added $7.50, the excess recording fee, and the $100.00 settlement fee to those charges that are considered the plaintiff's finance charges for purposes of the HOEPA calculation. The explanation, however, does not clarify why another check was issued to Charles E. Horne in the sum of $175.00 with the notation "closing notary fees." The court presumes, but is not certain, that this actually represents the $75.00 title insurance premium and the $100.00 settlement fee.

Although, the $400.00 title search fee appears to be reasonable, there needs to be further clarification that this is the actual amount charged for this service. Like the title insurance premium, it would not be included in the plaintiff's finance charges for purposes of the HOEPA calculation.

## III.

■ The legal issue before the court is whether the aforementioned loan qualifies for protection under the Truth in Lending Act (TILA), 15 U.S.C. § 1601, et seq., if it is a "high cost" loan as defined by the 1994 Home Ownership and Equity Protection Act (HOEPA) amendments to TILA. A mortgage loan transaction is covered by HOEPA if the:

(aa)(1) mortgage refer[s] to ... a consumer credit transaction that is secured by the consumer's principal dwelling ...,[and] if (A) the annual percentage rate at the consummation of the transaction will exceed by more than 10 percentage points the yield on Treasury securities having comparable periods of maturity on the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor; or (B) the total points and fees payable by the consumer *at or before closing* will exceed the greater of—(i) 8 percent of the total loan amount; or (ii) $400. (emphasis added)

15 U.S.C. § 1602(aa)(1)(A) and (B).

The test set forth in 15 U.S.C. § 1602(aa)(1)(A) has not been raised in this proceeding. As such, the court will focus exclusively on § 1602(aa)(1)(B)(i), the eight percent of the total loan amount test.

It is factually undisputed that $800.00 of the mortgage broker's fee, paid at closing to The Hurricane Company, was paid from funds contributed by the plaintiff. The balance of the mortgage broker's fee in the sum of $392.00 was paid to The Hurricane Company by the lender, Delta. This latter portion of the fee was to be recouped from the plaintiff by Delta through the assessment of a slightly higher interest rate to be paid over the life of the loan. It clearly was not paid "at or before closing" by the plaintiff. The question then narrows to whether the lender paid portion of the broker's fee should be included in the plaintiff's finance charges that are considered when determining if HOEPA is applicable.

Set forth in *Terry v. Community Bank of Northern Virginia*, 255 F.Supp.2d 811 (W.D.Tenn.2003), is the following explanation, to-wit:

The first step in resolving statutory construction questions " 'is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.' " *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002) (internal citations omitted). In fact, where the language of the statute cannot express more than one meaning. " *'the duty of interpretation does not arise.'* " *Baum v. Madigan,* 979 F.2d 438 (6th Cir.1992) (citing *Caminetti v. U.S.,* 242 U.S. 470, 485–486, 37 S.Ct. 192, 61 L.Ed. 442 (1917)) (emphasis in original). *Title 15 U.S.C. § 1602* (aa)(1) plainly states that unless a mortgage satisfies *§ 1602* (aa)(1)(A), the loan qualifies for TILA protections only if "the total points and fees *payable* by the consumer *at or before closing* " meet a certain threshold amount. *15 U.S.C. § 1602* (aa)(1)(B) (emphasis added). There have been no allegations that Plaintiffs' loans are covered by *§ 1602* (aa)(1)(A). Thus, for RFC to be liable, Plaintiffs must meet the criteria stated in *§ 1602* (aa)(1)(B). Black's Law Dictionary defines "payable" as follows:

Capable of being paid; suitable to be paid; admitting or demanding payment; justly due; legally enforceable. A sum of money is said to be payable when a person is under an obligation to pay it. Payable may therefore signify an obligation to pay at a future time, but *when used without qualification, [the] term normally means that the debt is payable at once,* as opposed to owing.

Black's Law Dictionary 1016 (6th ed.1979) (emphasis added). Under this definition, even if the time for payment of points and fees on a "high cost" loan was unspecified, the points and fees would be "payable at once," as opposed to over the course of a loan. However, Congress specifically qualified the term "payable" with a time certain—i.e. the points and fees must be payable "at or before closing." *15 U.S.C. § 1602* (aa)(1)(B). There is nothing ambiguous about the language of § 1602(aa)(1)(B) which lends to another interpretation of this statute. Accordingly, the Court finds that a mortgage qualifies for TILA protections only where the mortgagor is required to pay certain points and fees at or before closing of a loan, not over the course of the loan.

The plaintiff relies upon the decision of *Mourer v. Equicredit Corp. of America and Cascade Capital Funding (In re Mourer),* 287 B.R. 889 (Bankr.W.D.Mich. 2003), which reaches the opposite conclusion from *Terry* on practically identical facts. The *Mourer* court commented as follows, to-wit:

In this case, the yield spread premium is being paid by the consumer in the form of a higher interest rate. Interest is not an item that is paid up front, out of pocket at closing, but throughout the life of the loan. Consequently, Equicredit argues that because it is not mandatory that this fee be disclosed as a finance charge it should not be included in its calculation.

However, we find that by virtue of the definition of a finance charge found in *§ 226.4(a)* and consistent with the special rule regarding mortgage broker fees in *§ 226.4(a)(3),* the yield spread premium would be a finance charge indirectly paid by the consumer incident to the extension of credit.

We come to this conclusion primarily by looking to the spirit of the law. "Not the letter, but the spirit: for the letter killeth, but the spirit giveth life." *The Second Epistle of Paul the Apostle to the Corinthians 3:6.*

This court is persuaded by the reasoning expressed in the *Terry* opinion. While the lender's contribution to the mortgage broker's fee will obviously be more than repaid by the plaintiff over the life of the loan through the elevated interest rate, the plain meaning of the statute, i.e., "payable by the consumer at or before closing," cannot be ignored. This is the case even if the court would prefer to look to the "spirit and not the letter of the law." The *Terry* conclusion is bolstered by the fact that legislation has been introduced, but not yet enacted, to address the indirect payment of the mortgage broker's fee. As noted in the defendants' supplemental memorandum:

> "Parenthetically, Senator Paul Sarbanes recently introduced a bill (S 1928) proposing a prospective amendment to § 103(aa) of HOEPA. Specifically, the proposed change, as it relates to this matter, is to change, 'All compensation to mortgage brokers' to 'All compensation paid directly or *indirectly* by a consumer *or a creditor* to a mortgage broker,' and the terms 'payable at or before closing' to 'payable *on the transaction.*' (emphasis added)
>
> Similarly, on March 16, 2004, a bill (HR 3974), sponsored by House Representatives Brad Miller and Melvin Watt, was introduced seeking to prospectively revise the HOEPA fees by proposing a change to subparagraph (B) to 'all compensation paid directly or *indirectly* by a consumer *or creditor* to a mortgage broker from any source ...'" (emphasis added)

### IV.

As noted hereinabove, the court is not satisfied that a full explanation has been provided by Delta concerning all of the fees that were charged at the loan closing. The fees in question, which on the surface appear to be reasonable, would not impact the HOEPA calculation. The court would hasten to mention, however, that Delta, as the lender, is responsible for the conduct of its settlement agent, Transcontinental Title. If the settlement agent, who was not named as a defendant in this proceeding, made inappropriate disbursements at closing, then Delta could possibly be liable to the plaintiff for these amounts. These matters must be resolved after a trial on the merits.

### V.

The HOEPA calculation is set forth as follows:

| | |
|---|---|
| Loan Amount | $ 22,400.00 |
| Less: Allowable Finance Charges | 1,416.50 |
| Net Amount | $ 20,983.50 |
| Multiple of 8% | × .08 |
| Maximum Finance Charges | $ 1,678.68 |

As such, Countrywide's motion to dismiss is well taken, but only as to Countrywide. The loan in question is not a "high cost" HOEPA loan, and the loan documentation does not reflect any apparent irregularities.

An order, consistent with this opinion will be entered contemporaneously herewith.