**In re Rebecca Sue MOURER and Ronald Lee Mourer, Debtors.**

**Rebecca Sue Mourer and Ronald Lee Mourer, Plaintiffs–Appellees,**

**v.**

**EquiCredit Corporation of America, Defendant–Appellant.**

No. 1:03–CV–141.
Bankruptcy No. SG 00–1–103.
Adversary No. 01–88196.

United States District Court,
W.D. Michigan,
Southern Division.

March 31, 2004.

Rebecca Sue Mourer and Ronald Lee Mourer, Kent City, MI, pro se.

David G. Hagens, Dykema Gossett PLLC, Grand Rapids, MI, Randall J. Groendyk, Varnum, Riddering, Schmidt & Howlett, LLP, Grand Rapids, MI, Michael M. Malinowski, Michael M. Malinowski, P.L.C., Grand Rapids, Arthur F. Radke, Dykema, Gossett, Rooks, Pitts, PLLC, Chicago, IL, for defendants.

Michael O. Nelson, Grand Rapids, MI, for appellees.

## MEMORANDUM OPINION

MCKEAGUE, District Judge.

This is an appeal from an order of the bankruptcy court in a Chapter 13 adversary proceeding. The bankruptcy court held that EquiCredit Corporation of America violated the Truth in Lending Act and the Home Ownership and Equity Protection Act in its refinancing of the debtors' home loan by failing to make required disclosures. The bankruptcy court awarded partial relief to the debtors, but held they were estopped from rescinding the transaction altogether. Having duly considered the parties' briefs and exhibits and having heard oral arguments of counsel, the Court concludes, for the reasons that follow, that the judgment of the bankruptcy court must be affirmed in part and reversed in part.

## I

In May 2000, debtors Rebecca Sue Mourer and Ronald Lee Mourer refinanced their home loan through the services of mortgage broker Cascade Capital Funding LLC ("Cascade"). The total amount of the loan, from mortgagee EquiCredit Corporation of America ("EquiCredit"), was $58,228.00. The Mourers were able to pay off their car loan, a previous mortgage and delinquent taxes, and received cash in the amount of $5,006.01. At the closing, on May 5, 2000, the Mourers learned that the interest rate on the loan was 13.3729%, rather than the 10.75% rate that had initially been estimated. In addition, the Mourers were required to pay points and fees in connection with the loan, including a broker fee of $3,500, a processing and underwriting fee of $370, and a "yield spread premium" of $1,248. The yield spread premium was actually paid by EquiCredit to Cascade and recouped by EquiCredit from the Mourers through a higher interest rate on the loan. The Mourers recognized that they could have refused to consummate the transaction at this point, but were anxious to pay off their pre-existing debts.

On December 20, 2000, the Mourers petitioned for Chapter 13 bankruptcy relief and listed EquiCredit as a secured creditor for an outstanding indebtedness of $60,000. The Mourers submitted a proposed plan, which was confirmed on February 28, 2001. The plan treated EquiCredit as a secured creditor and provided that EquiCredit would receive monthly payments of $661.13, to commence on February 1, 2001. On May 8, 2001, the Mourers commenced an adversary proceeding in the bankruptcy court, seeking to rescind the refinancing transaction because EquiCredit had charged excessive points and fees and failed to make certain required disclosures, in violation of the Home Ownership and Equity Protection Act ("HOE-PA") provisions of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601–1666i, as implemented by Regulation Z, 12 C.F.R. Pt. 226.

The bankruptcy court found partly in their favor, concluding that the yield spread premium ("YSP") was, under 12 C.F.R. § 226.4(a), a "finance charge" paid indirectly by the Mourers incident to the extension of credit. As such, the YSP was deemed to be among the total "points and fees" payable by the Mourers at or before the loan closing, under 12 C.F.R. § 226.32(a)(1). Because the addition of the YSP to the calculation resulted in total points and fees exceeding 8% of the total loan amount, the Regulation Z disclosure requirements were deemed triggered. The bankruptcy court found that these requirements had not been met. The Court also found that EquiCredit had failed to provide required disclosures to the Mourers in a form they could keep, in violation of 12 C.F.R. § 226.17. The bankruptcy court awarded the Mourers damages under 15 U.S.C. § 1640. The court denied the Mourers' request to rescind the transaction, however, holding that such relief was barred by the prior confirmation of their Chapter 13 plan.

On appeal, EquiCredit insists the YSP is not a finance charge paid directly by the borrowers and that the bankruptcy court's ruling is contrary to law. In addition, EquiCredit maintains that all disclosures required under TILA were in fact made. In their cross-appeal, the Mourers contend the bankruptcy court erroneously denied them their right to rescind.

## II

There being no disputed question of fact concerning the proper treatment of the YSP under HOEPA and its implementing regulations, the bankruptcy court's ruling

in this regard is a matter of law subject to *de novo* review. *In re Charfoos,* 979 F.2d 390, 392 (6th Cir.1992).

■ In holding that the YSP of $1,248 paid by EquiCredit to Cascade, and ultimately to be paid by the Mourers to Equi-Credit over the course of the loan (in the form of a 1.1%-enhanced interest rate on the borrowed principal) was a "fee payable by the consumer at or before the loan closing" under 12 C.F.R. § 226.32(a)(1)(ii), the bankruptcy court concededly overlooked the "letter of the law" in order to enforce the "spirit of the law." The court properly observed that TILA is a remedial statute and should be construed liberally in favor of the consumer. *Pfennig v. Household Credit Services, Inc.,* 286 F.3d 340, 344 (6th Cir.2002). The court also properly concluded that the YSP is a finance charge or fee that is indirectly paid by the Mourers. It is also true that the purpose of TILA, to assure meaningful disclosure of credit terms to consumers, *see id.,* would arguably be better served by requiring full disclosure of the YSP.

Yet, although the courts are obliged to construe the law so as to effectuate its purpose, this duty does not include license to ignore the law's clear and unambiguous terms or to refrain from enforcing them in accordance with their plain meaning. *See United States v. Miami University,* 294 F.3d 797, 812 (6th Cir.2002)(observing that when a law's meaning is plain and unambiguous on its face, the court's task to construe it is at an end). The bankruptcy court's holding that the YSP is a fee that must be included in the calculation of the 8% trigger of 12 C.F.R. § 226.32(a)(1)(ii) flies in the face of that very provision's express inclusion only of "fees payable by the consumer at or before loan closing." There is no evidence or even contention that the Mourers paid the YSP at or before loan closing. The YSP was paid by EquiCredit to Cascade at the time of closing, but to the extent this obligation was payable by the Mourers, it was payable in the form of a higher interest rate, not at or before the closing, but over the course of the loan. It necessarily follows that the YSP is not properly included in the calculation of the 8% trigger. The bankruptcy court's contrary conclusion is not supported by any case law authority. Nor have the Mourers identified any.

TILA is a remedial statute. It is also highly technical. *Pfennig,* 286 F.3d at 344. To impose requirements on lenders at odds with the plain meaning of the express terms of Regulation Z is simply not fair and is contrary to law. Accordingly, the bankruptcy court's ruling is in this respect overturned.

### III

■ EquiCredit also takes issue with the bankruptcy court's holding that it did not comply with the disclosure requirements of 12 C.F.R. § 226.17(a) and (b), i.e., to make the required disclosures, in writing, in a form that the consumer may keep, before consummation of the transaction. EquiCredit points to acknowledgments signed by Rebecca Mourer, attesting to her receipt of the required disclosures at the time of closing. These acknowledgments give rise to a rebuttable presumption of delivery of the disclosures. 15 U.S.C. § 1635(c). In accepting the Mourers' testimony that they did not, in fact, receive copies of the documents to keep at the time of the closing, the bankruptcy court is said to have improperly ignored this statutory presumption.

The bankruptcy court's determination that the Mourers were not provided the disclosures in a form they could keep at the time of closing is a finding of fact which this Court may set aside only if clearly erroneous. *Charfoos,* 979 F.2d at

392. The bankruptcy court heard the testimony of Rebecca Mourer and Ronald Mourer, both of whom testified that they hurriedly signed many documents without reading them. Both testified unequivocally that they were not given copies of documents to keep at the time of the closing. Rebecca Mourer further testified to the extreme difficulties she experienced in trying to obtain copies, beginning the first business day after the closing and continuing for approximately two months.

The Mourers' testimony is essentially undisputed. The bankruptcy court had the opportunity to observe their demeanor and assess their credibility. Although the bankruptcy court did not expressly address the rebuttable presumption of 15 U.S.C. § 1635(c), the implicit finding that it had been adequately rebutted by the Mourers' testimony cannot be said to be clearly erroneous. *See Stone v. Mehlberg,* 728 F.Supp. 1341, 1353–54 (W.D.Mich.1989)(holding presumption adequately rebutted by borrowers' uncontroverted affidavits). On this point, the ruling of the bankruptcy court must be affirmed.

## IV

■ In their cross-appeal, the Mourers maintain that rescission is an available remedy notwithstanding the Court's conclusion, above, that the HOEPA protections were not triggered by this refinancing transaction. They contend their right of rescission pursuant to 12 C.F.R. § 226.23 was extended by virtue of the creditor's failure to give proper notice of the right to rescind and that the bankruptcy court erroneously applied estoppel by confirmation to deny this remedy. This claim of error presents a question of law subject to *de novo* review.

Under 12 C.F.R. § 226.23(a)(3), the Mourers had the right to rescind the transaction until midnight of the third business day following consummation, delivery of the required notice to rescind, or delivery of all material disclosures, whichever occurred last. Further, "if the required notice or material disclosures are not delivered, the right to rescind shall expire three years after consummation." *Id.* Applying this language, the bankruptcy court summarily determined that because the material disclosures were not delivered to the Mourers within three days after consummation, their right to rescind was extended for three years.

■ The bankruptcy court's reasoning is flawed in that it ignores the undisputed fact that the material disclosures, including notice of the right to rescind, *were* delivered to the Mourers, albeit several weeks after the closing. Hence, under 12 C.F.R. § 226.23(a)(3), their right to rescind was extended until midnight of the third business day following delivery of the disclosures and notice. The three-year extension (or limitation) would have come into play only if the disclosures were not delivered to the Mourers. It being undisputed that the Mourers did not exercise their right to rescind within three days after receipt of the disclosures, the right had clearly expired.

Anticipating this analysis, the Mourers now argue that the notice of right to rescind which they did receive did not conform to the requirements of 12 C.F.R. § 226.23(b) and was therefore not valid. Among other things, the notice must clearly and conspicuously disclose "the date the rescission period expires." 12 C.F.R. § 226.23(b)(1)(v). The notice they finally received provides in relevant part:

You have the legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

1) the date of the transaction, which is *May 5, 2000;* or

2) the date you received your Truth in Lending disclosures; or

3) the date you received this notice of your right to cancel.

. . . .

If you decide to cancel this transaction, you may do so by notifying us in writing, at. . . .

You may use any written statement that is signed and dated by you and states your intention to cancel, and/or you may use this notice by dating and signing below.

. . . .

If you cancel by mail or telegram, you must send the notice no later than midnight of *May 9, 2000* (date)(or midnight of the third business day following the latest of the three events listed above).

The Mourers contend this notice is inadequate because it does not specify "the date" the rescission period expires. In support, the Mourers cite *Semar v. Platte Valley Federal Savings & Loan Ass'n,* 791 F.2d 699, 704 (9th Cir.1986)(holding typographical error, omitting expiration date from notice, is technical violation of TILA notice requirements), and *Reynolds v. D & N Bank,* 792 F.Supp. 1035, 1037–38 (E.D.Mich.1992)(holding notice deficient in several respects, one of which was omission of expiration date).

Here, in contrast to the cited cases, the notice expiration date blank is filled in, and accurately so. In fact, the notice conforms precisely to the model form provided at 12 C.F.R. Pt. 226, Appendix H, specifically identified at 12 C.F.R. § 226.23(b)(2) as satisfying the disclosure requirements of § 226.23(b)(1). The notice of right to rescind received by the Mourers was therefore proper in all respects. It follows that their right to rescind expired three days after they received the required disclosures and notice, and long before they attempted to exercise the right.

Accordingly, the Court concurs with the bankruptcy court's determination that rescission is unavailable to the Mourers, although it is unnecessary to take up the question of estoppel by confirmation to reach this result.

**V**

In sum, the ruling of the bankruptcy court is **AFFIRMED** in part and **REVERSED** in part. The bankruptcy court's January 10, 2003 order will be **VACATED** and the matter will therefore be **REMANDED** to the bankruptcy court for the entry of a new judgment order consistent with this opinion and awarding appropriate relief to the Mourers based exclusively on the violation of the 12 C.F.R. § 226.17 disclosure requirements. An order consistent with this opinion shall issue forthwith.

**ORDER OF REMAND FOR ENTRY OF JUDGMENT**

In accordance with the Court's memorandum opinion of even date,

**IT IS HEREBY ORDERED** that the bankruptcy court's opinion of January 10, 2003 is **AFFIRMED** in part and **REVERSED** in part; and

**IT IS FURTHER ORDERED** that the bankruptcy court's order of January 10, 2003 is **VACATED,** and this matter is **REMANDED** to the bankruptcy court for entry of a new judgment order awarding plaintiffs Rebecca Sue Mourer and Ronald Lee Mourer appropriate relief based exclusively on their claim under the Truth in Lending Act for violation of the disclosure requirements of 12 C.F.R. § 226.17.