Penny R. NUNN, Appellant,

v.

**IMC MORTGAGE COMPANY,**
**Appellee.**

No. 03–CV–6008L.

United States District Court,
W.D. New York.

April 20, 2004.

Mark H. Wattenberg, Southern Tier Legal Services, Bath, NY, for Appellant.

Gerald N. Murphy, Forsyth, Howe, O'Dwyer, Kalb & Murphy, P.C., Rochester, NY, for Appellee.

## DECISION AND ORDER

LARIMER, District Judge.

This is an appeal from an order[1] of the Bankruptcy Court for the Western District of New York (Ninfo, C.J.) denying the debtor's motion for partial summary judgment, in an adversary proceeding that was prosecuted, in part, to rescind a mortgage to defendant IMC Mortgage Company ("IMC Mortgage") because of the alleged failure to comply with certain notice provisions of the Home Ownership Equity Protection Act ("HOEPA"), 15 U.S.C. § 1641(d).

There are actually two orders of Chief Judge Ninfo that are now before this Court on appeal. The first is Chief Judge Ninfo's Decision and Order of May 9, 2002, denying debtor's motion for summary judgment and dismissing her claim under HOEPA. In reaction to that Decision and Order, the debtor filed a motion for reconsideration, and Chief Judge Ninfo issued the second of his decisions, on July 11, 2002, denying the debtor's motion for reconsideration. Although Chief Judge Ninfo modified one factual finding, his second Decision and Order of July 11, 2002, reaffirmed his earlier decision denying summary judgment, albeit with some further elucidation of his reasons for doing so.

The parties have thoroughly briefed the relevant issues and have appeared before this Court for oral argument. After due consideration, I AFFIRM the orders appealed from.

## DISCUSSION

■ Debtor, Penny R. Nunn, filed a petition seeking relief under Chapter 13. One of the debts listed was a 1998 home equity mortgage on her residence in Hornell, New York to defendant, IMC Mortgage in the approximate sum of $26,000. After filing her petition, Nunn commenced an adversary proceeding to rescind the mortgage because IMC Mortgage had failed to comply with the disclosure requirements under the truth-in-lending provisions of HOEPA. If HOEPA does apply to the transaction and if its provisions, including a three-day notice of the right to cancel were not complied with, then the mortgage contract may be rescinded.

The broad issue before both the Bankruptcy Court and this Court is whether HOEPA does apply to this particular transaction. The specific issue that separates the parties is whether the triggering event set forth at 15 U.S.C. § 1602(aa)(1)(B) applies, thereby requiring conformity with all the applicable disclosure requirements. That section of HOEPA provides that mortgages are covered by its provisions if "the total points and

---

1. The order appealed from was not a final order but this Court granted the debtor leave to appeal to this Court by order entered October 3, 2002.

fees payable by the consumer at or before closing will exceed . . . 8% of the total loan amount."

After analyzing the transaction and the fees paid, Chief Judge Ninfo determined that the 8% fee trigger had not been met and, therefore HOEPA did not apply. I agree with his analysis and therefore affirm.

In this case, when Nunn applied for the mortgage, she agreed to pay the mortgage broker, Michael Cronin, a fee of 5¾% for arranging the loan. In fact, when the loan closed, this sum—$1,437.50—was paid directly to the broker at closing. The parties do not dispute that this fee—5¾%—counts toward the 8% amount that triggers HOEPA's applicability.

In this case, there was an additional fee of 3% paid not directly by the mortgagor, Nunn, but by the lender-mortgagee, IMC Mortgage, to the broker, Cronin. Nunn contends that this 3% fee should be counted toward the 8% trigger. If it does count, all parties agree that the resulting 8¾% fee would trigger HOEPA.

When Nunn signed the original documents with the broker engaging his services, she executed a Mortgage Loan Origination Agreement ("Origination Agreement") in which she agreed to finance that part of the broker's fee that was to be paid by IMC Mortgage to the broker. The Origination Agreement advised Nunn that because of that agreement she would be paying a slightly higher interest rate over the course of the loan.

■ After reviewing the statute, the official staff commentary and treatises, Chief Judge Ninfo ruled that the "indirect fee" paid to the broker by the lender was not required to be included in determining the 8% fees trigger. I concur with Chief Judge Ninfo and find that the reasons given both in the May 9 and July 11, 2002 decisions are sound. I understand that the standard of review is *de novo,* and it is by that standard that I have considered the appeal. *National Union Fire Ins. Co. v. Bonnanzio,* 91 F.3d 296, 300 (2d Cir. 1996).

I think the principal focus should be the statute itself. Section 1602(aa)(1)(B) speaks only to fees paid *by the consumer* at a specific time, that is, *at or before closing.* By that definition, the only broker's fees paid were the 5¾% fees. Chief Judge Ninfo specifically noted this statutory language in his July 11, 2002 decision. He notes, as do I, that if other fees are intended to be included, then the remedy for clarification rests with Congress.

In his decision, Chief Judge Ninfo noted a complete lack of authority to support Nunn's position that the indirect fees must be included in determining the 8% trigger. During the pendency of this appeal, the Bankruptcy Court in the Western District of Michigan ruled contrary to Chief Judge Ninfo and held that the financing charge paid indirectly by the borrowers in a situation similar to the case at hand, was deemed to be "points and fees" payable at closing and, therefore, counted toward the 8% threshold. *In re Mourer,* 287 B.R. 889 (Bankr.W.D.Mich.2003). That decision, however, was recently reversed on appeal to the district court. *Mourer v. Equicredit Corp. of America,* No. 1:03–CV–141 (W.D. Mich. Mar. 31, 2004) (McKeague, J.).

In his decision, Judge McKeague notes that the debtor's position, like Nunn's position here, is not supported by any case law authority, and appears contrary to the statutory language that limits the provision to fees payable by the consumer at closing. *Id.,* slip op. at 4.

## CONCLUSION

The Decisions and Orders of Bankruptcy Court, entered May 9, 2002 and July 11, 2002, are affirmed. The appeal to this Court is dismissed and the case is remanded to the Bankruptcy Court for further proceedings.

IT IS SO ORDERED.