SUSAN M. CHEHARDY, Judge.
 

 12This is a suit for violation of federal consumer protection laws regarding home mortgage loans. The defendant appeals a partial judgment as to liability only. We affirm.
 

 On October 15, 2003 Vera Mae Burton Zeno (“Zeno”) filed suit against Colonial Mortgage and Loan Corporation (“Colonial”) for violation of the Truth in Lending Act (“TILA”) as amended by the Home Ownership and Equity Protection Act (“HOEPA”) and Regulation Z of the Federal Reserve Board, as well as for violation of the Louisiana Consumer Protection Act.
 
 [1]
 
 Zeno alleged that Colonial violated its legal obligations in various ways, including failure to give her the proper Truth-in-Lending notices within the requisite time period, and improperly imposing a prepayment penalty, among other items. Zeno sought judgment rescinding the mortgage, canceling the debt, and returning to her all monies she paid to Colonial, as well as actual damages, attorney’s fees, interest and costs.
 

 Zeno alleged that on November 30, 2000 she signed papers for a loan from Colonial for installation of aluminum siding on her
 
 *95
 
 home. The note shows the face amount of the loan as $17,894.44, to be repaid in 24 installments of $200.00 and 150 installments of $382.04, at an annual percentage rate of 17.97%. However, the |sTruth in Lending disclosure statement stated the loan amount was $16,105.00 and the annual percentage rate was 20.12%, with a finance charge of $40,493.24, for total payments of $50,598.24. Zeno asserted this was a predatory loan as described in TILA, as amended by HOEPA.
 

 Subsequently Zeno cancelled the siding job due to the death of her daughter, and used some of the loan money to pay for her daughter’s funeral and to pay the siding contractor for work done before she canceled the job. She alleged she received only $8,000.00 of the loan proceeds, comprising $6,000.00 for the funeral and $2,000.00 for the siding contractor for work done prior to cancellation of the siding job. She asserted it is an unfair act and practice to collect $16,105.00 when the creditor lent only $8,000.00.
 

 Zeno alleged she was not given the disclosure statement or the notice of preservation of consumer rights and defenses within three days prior to the loan closing, as required by state and federal law. Rather, she signed for receipt of the notices on the date the loan was consummated. Hence, she asserted, under TILA her right to rescind was extended from three days to three years.
 

 Zeno stated that on May 13, 2003, she notified Colonial she was rescinding the loan, in accordance with 15 U.S.C.A. § 1635 of TILA and Regulation Z of the Federal Reserve Board, for Colonial’s failure to give her the disclosures required by law. Under the law, within 20 days after notice of rescission Colonial was required to return any money or other property given by Zeno as earnest money, down payment or otherwise, and to take any necessary action to terminate the mortgage Colonial has on Zeno’s property. Zeno asserted that Colonial’s failure to do so gave her another cause of action for damages and attorney’s fees, pursuant to 15 U.S.C.A. § 1640.
 

 |4Zeno alleged further that the annual percentage interest rate Colonial charged on her loan was more than ten points above the applicable U.S. Treasury bond rate and that the loan charges are more than eight percent of the total loan amount minus points and fees, triggering application of HOEPA, 15 U.S.C.A. §§ 1602(aa)(l) and 1602(aa)(l)(B).
 

 After Colonial filed an answer denying her claims, Zeno filed a Motion for Summary Judgment. The court denied summary judgment. Zeno then filed a Rule to Show Cause, requesting the court to issue a partial judgment as to liability, reserving the other issues. After a hearing the court rendered judgment in favor of the plaintiff, as to liability only, for violation of the Truth in Lending Act as amended by the Home Owners Equity Protection Act, 15 U.S.C.A. § 1601, et seq., and Regulation Z of the Federal Reserve Board, 12 C.F.R. § 266.1, et seq.
 

 In oral reasons for judgment the district court found in favor of the plaintiff on liability, as follows:
 

 This case involves a violation of the Truth in Lending Act, as it was amended by HOEPA ..., which is ... the Homeowners Equity Protection Act. And that act has certain provisions regarding prepayment penalties, that is, HOEPA in effect states there are no prepayment penalties, unless an exemption is met, whereby the income of the consumer is over fifty percent of the debt.
 

 
 *96
 
 Now the definition of the word “consumer” ... is certainly the subject today.
 

 [[Image here]]
 

 Consumer is defined as the person to whom the credit was extended, and certainly Mrs. Zeno was the one to whom the credit was extended for the loan to bury her daughter.
 

 [[Image here]]
 

 Colonial invites me to expand that definition and look at what they call the reality of the consumer’s household, and include in this any money that would be available to the consumer. The statute ... just fails to make any statement regarding monies that may be available to the consumer.
 

 [[Image here]]
 

 |5[T]he only definition of consumer is that set forth in the statute at 15 U.S.C.A. 1602, paragraph H. And so I do narrowly construe this. I construe this Truth in Lending, or HOEPA Act, liberally in favor of the borrower, as I believe the law to be.
 

 I find that Zeno’s occupants of the household were not natural persons to whom the credit was offered or extended, and I find that these bankruptcy laws do not apply to what is before me today.
 

 Accordingly, having found the loan was made to Zeno and secured by Zeno’s property, having found it was a HOEPA loan and that the loan violates the provisions of HOEPA, since there was a prepayment penalty, and the fifty percent rale was violated, I find that Vera May Burton Zeno is entitled to a judgment declaring Colonial Mortgage liable to her with the issues of damages to be reserved for a later date.
 

 Colonial has appealed, making the following assignments of error:
 
 [2]
 

 1. The Trial Court erred in failing to determine that the only statutory definition of the word “consumer” under the Truth in Lending Act (“TILA”) was as an adjective solely for the purpose of modifying the type of credit transactions intended to come within the purview of TILA, and in failing to determine that the Federal Reserve Board had exceeded its statutory authority by defining “consumer” as a noun in Regulation Z.
 

 2. The Trial Court erred in applying the Federal Reserve Board’s improperly and unauthorizedly derived definition of the word “consumer” as a noun in Regulation Z in order to determine that the phrase “monthly gross income of the consumer” used in TILA 15 USC § 1639(c)(2) meant only the income
 
 earned,
 
 by a natural person to whom the credit was extended.
 

 3. Notwithstanding whether or not the Trial Court erred in its determination of the definition of “consumer” as used in TILA, the Trial Court also erred in determining that the word “income,” as used in the phrase “monthly gross income of the consumer” in TILA and as used in the phrase “consumer’s monthly gross income” in Reg. Z § | B226.32(d)(7)(iii), was also intended to refer only to earned income instead of also including unearned income that plaintiff reasonably expected to receive and that was de
 
 *97
 
 rived from such sources as gifts and contributions from her spouse.
 

 4. The Trial Court erred in determining that plaintiffs monthly indebtedness was more than 50% of her gross monthly income and, therefore, the inclusion of a prepayment penalty was a violation of TILA and HOEPA, and further erred in using such a determination as the basis upon which to render its Partial Judgment as to Liability Only.
 

 5. The Trial Court erred in not determining that the judgment rendered on April 20, 2005, denying Zeno’s Motion for Summary Judgment, was the “law of the case” that should have precluded the rendering of the Judgment appealed from herein in that the earlier Judgment had already resolved, in favor of Colonial, the very same issue that was determined to the contrary and without the benefit of new evidence in the later judgment.
 

 LAW AND ANALYSIS
 

 The Truth in Lending Act (“TILA”) as amended by the Home Ownership and Equity Protection Act (“HOE-PA”), 15 U.S.C.A. § 1601, et seq. and Regulation Z of the Federal Reserve Board, 12 C.F.R. § 266.1, et seq., provides that when a consumer loan violates the Act, the consumer is entitled to rescind the loan, to recover monies and other property given to the creditor, and to cancellation of any mortgages made in connection with the loan.
 

 To determine whether a loan fits within the parameters of the statutes, the court must examine various aspects of the loan transaction and the documents connected with it.
 
 [3]
 
 In this case, the focus is on whether the loan’s inclusion of a prepayment penalty was improper. If it was, the plaintiff is protected and the defendant is liable under HOEPA.
 

 |7The rule regarding prepayment penalties in consumer mortgages is set out in 15 U.S.C. § 1639, as follows:
 

 (c) No prepayment penalty
 

 (1) In general
 

 (A) Limitation on terms
 

 A mortgage referred to in section 1602(aa) of this title may not contain terms under which a consumer must pay a prepayment penalty for paying all or part of the principal before the date on which the principal is due.
 

 [[Image here]]
 

 (2) Exception
 

 Notwithstanding paragraph (1), a mortgage referred to in section 1602(aa) of this title may contain a prepayment penalty (including terms calculating a refund by a method that is not prohibited under section 1615(b) of this title for the transaction in question) if—
 

 (A) at the time the mortgage is consummated—
 

 (i) the consumer is not liable for an amount of monthly indebtedness payments (including the amount of credit extended or to be extended under the transaction) that is greater than 50 percent of the monthly gross income of the consumer; and
 

 (ii) the income and expenses of the consumer are verified by a financial statement signed by the consumer, by a credit report, and in the case
 
 *98
 
 of unemployment income, by payment records or by verification from the employer of the consumer (which verification may be in the form of a copy of a pay stub or other payment record supplied by the consumer);
 

 The corresponding provision of 12 C.F.R. § 226.32, Federal Reserve Board Regulation Z, states in pertinent part:
 

 (d) Limitations. A mortgage transaction subject to this section shall not included the following terms:
 

 [[Image here]]
 

 (6) Prepayment penalties. Except as allowed under paragraph (d)(7) of this section, a penalty for | spaying all or part of the principal before the date on which the principal is due. A prepayment penalty includes computing a refund of unearned interest by a method that is less favorable to the consumer than the actuarial method, as defined by section 938(d) of the Housing and Community Development Act of 1992.
 

 (7) Prepayment penalty exception. A mortgage transaction subject to this section may provide for a prepayment penalty otherwise permitted by law (including a refund calculated according to the rule of 78s) if:
 

 [[Image here]]
 

 (hi) At consummation, the consumer’s total monthly debts (including amounts owed under the mortgage) do not exceed 50 percent of the consumer’s monthly gross income, as verified by the consumer’s signed financial statement, a credit report, and payment records for employment income.
 

 The issue is whether a court may consider the income coming into a consumer’s household from a non-debtor spouse when making a determination concerning the ratio between the monthly income available to the consumer and the monthly indebtedness for which the consumer is obligated.
 

 The loan application indicates that Zeno’s loan application listed not only her Social Security income of approximately $640.00 per month, but also contributions made by her husband of $1,200.00, for a total of $1,840.00 per month, and Zeno’s monthly indebtedness to a bank of $195.00. It is uncontested that Zeno’s husband has no ownership interest in her house, that he did not apply for the loan, and that he was not liable for payment on the note.
 

 Zeno contends that only her income and expenses may be considered. If only her income and expenses are considered, including the payment under the loan at issue, her monthly debts clearly exceed 50% of her monthly gross income, making the inclusion of a prepayment penalty forbidden and the loan illegal.
 

 | ¡Colonial contends it properly considered the income of Zeno’s husband in calculating her means, and if that amount is considered the prepayment penalty is not improper and the loan is legal. (Specifically, Zeno’s monthly indebtedness including payments under this loan would range from $395.00 to $527.04, substantially less than 50% of the gross monthly income reflected on the loan application.)
 

 Colonial urges us to follow the lead of bankruptcy courts, which have concluded that a non-filing spouse’s income, regularly contributed to household expenses, can be included in the debtor’s income for purposes of means testing under Chapter 7.
 
 [4]
 

 
 *99
 
 Colonial argues that the creditor may consider gift income or other unverifiable income — that any expected income can be considered by the creditor except for equity income that the consumer might realize through a foreclosure on his property. Colonial notes that comments to 12 C.F.R. § 226.32(e)(1) “made it clear that the Federal Reserve Board permitted a creditor ‘to assess a prepayment penalty if, in part, the creditor verifies that the consumer’s monthly debt to income ratio is 50% or less.’ ” 60 F.R. 15463-01, at p. 15467,1995 WL 123392 (F.R.).
 

 According to Colonial, the use of “consumer” as an adjective in 15 C.F.R. § 226.2(a)(ll) does not provide a statutory definition of “consumer” as a noun, and that the only intent of that subsection was to describe the type of credit transaction that Congress intended to place in the purview of the consumer protection statutes. Colonial contends there is no logical basis to extend this definition to conclude that Congress meant to limit the phrase “gross income of the consumer” to include only |1f)monies earned by the consumer (here, Zeno) yet to exclude monies regularly available to the consumer (here, Zeno’s husband’s salary).
 

 Alternatively, Colonial asserts the court should have applied the law of the case rule and followed the district court’s earlier denial of summary judgment on the question whether the 50% rule exception to the HOEPA preclusion of a prepayment penalty was applicable.
 
 [5]
 
 Appellant states, “The later judgment, which ruled to the complete contrary of the earlier judgment and which was not based on the introduction of any new evidence, should not have been rendered in that the law of the case had already been determined in the earlier judgment.”
 

 In response, Zeno asserts that “consumer” as defined in HOEPA means a natural person to whom credit is offered or extended, when the money, property or services which are the subject of the transaction are primarily for personal, family or household purposes.” She argues that Zeno’s husband was not a person to whom credit was offered or extended by Colonial, and was not the person liable for payment of the note. Thus, Zeno states, her husband’s income may not be considered part of her monthly gross income for purposes of these statutes. Zeno contends that to do so would in itself be a violation of her right to be granted credit based on her income, her collateral, and her credit history, pursuant to the Equal Credit Opportunity Act, 15 U.S.C. § 1601, et seq.
 
 [6]
 

 Zeno asserts that for purposes of TILA, “consumer” is defined to mean a person to whom credit is offered or extended. Ap-pellee states that she was the consumer to whom credit was offered and extended; her husband did not own an interest in her home, nor was credit offered or extended to her husband, her son or her daughter, all of whom lived in the residence with her. Further, because | n appellee’s husband does not own the property that secured the loan, he is not a “consumer” under HOEPA.
 

 We agree with Zeno’s interpretation of the law.
 
 See Ingram v. Reliable Finance
 
 
 *100
 

 Co., Inc.,
 
 410 So.2d 768, 770 (La.App. 3 Cir.1981).
 

 Bankruptcy laws and consumer debt protection laws were enacted for different purposes. There is no analogy between them for purposes of this case. We agree with the trial court that HOEPA and Regulation Z must be interpreted in favor of the borrower.
 

 We find no merit to Colonial’s argument that the trial court was bound by law of the case arising from the earlier denial of the motion for summary judgment. Law of the case applies only when a ruling within a case has become final, usually by appeal:
 

 The law of the case doctrine refers to “(a) the binding force of trial court rulings during later stages of the trial, (b) the conclusive effects of appellate court rulings at the trial on remand, and (c) the rule that an appellate court will ordinarily not reconsider its own rulings of law on a subsequent appeal in the same case.”
 

 Petition of Sewerage and Water Bd. of New Orleans,
 
 278 So.2d 81, 83 (La.1973).
 

 In contrast, a denial of a summary judgment is always an interlocutory judgment, which the trial court may change at any time up to final judgment. Accordingly, law of the ease does not apply here, and the trial court was free to rule on the merits of the matter without following the court’s earlier ruling.
 

 DECREE
 

 For the foregoing reasons, the judgment is affirmed. Costs of appeal are assessed against the appellant, Colonial Mortgage and Loan Company.
 

 AFFIRMED.
 

 [1]
 

 . La.R.S. 51:1401, et seq.
 

 [2]
 

 . The assignments of error are quoted as set out in the appellant's brief.
 

 [3]
 

 . The court must examine the transaction as a whole and the purpose for which the credit was extended in order to determine whether die transaction was primarily consumer or commercial in nature.
 
 Tower v. Moss,
 
 625 F.2d 1161, 1166 (5th Cir. 1980).
 

 [4]
 

 . Colonial cites
 
 In re Baldino,
 
 369 B.R. 858 (Bankr.M.D.Pa.6/14/07);
 
 In re Berndt,
 
 127
 
 *99
 
 B.R. 222 (Bankr.D.N.D.1991);
 
 In re Duncan,
 
 201 B.R. 889 (Bankr.W.D.Pa. 1996);
 
 In re Innes,
 
 284 B.R. 496 (D.Kan.2002);
 
 In re White,
 
 243 B.R. 498 (Bankr.N.D.AL, S.D. 1999);
 
 In re Schnabel,
 
 153 B.R. 809 (Bankr. N.D.Ill., E.D.1993);
 
 In the Matter of Strong,
 
 84 B.R. 541 (Bkrtcy.N.D.Ind.1988).
 

 [5]
 

 . The motion for summary judgment was heard and denied by a different judge than the one who granted the partial judgment as to liability only that is before us today.
 

 [6]
 

 . See
 
 Fischl
 
 v.
 
 GMAC,
 
 708 F.2d 143 (5th Cir. 1983).