WEIMER, Justice.[1]
| jThis matter is before the court for a determination of whether the court of appeal erred in finding that a yield spread premium paid by the lender to a mortgage broker is part of the “total points and fees payable by the consumer at or before closing” within the meaning of 15 U.S.C. § 1602(aa)(l)(B) of the Home Ownership and Equity Protection Act. For reasons that follow, we conclude that the appellate court legally erred in finding that a lender-paid yield spread premium constitutes points and fees. Accordingly, we reverse the court of appeal’s decision on that issue and reinstate the judgment of the trial court.
FACTUAL AND PROCEDURAL BACKGROUND
On May 9, 2001, Kathleen Johnson Parnell (Parnell) executed an adjustable rate promissory note in the amount of $63,200 at an initial yearly interest rate of 12.65 percent. This note was secured by a mortgage on Parnell’s home. The HUD-1 |2Settlement Statement prepared in connection with the closing of the loan reveals *162 that the lender paid the mortgage broker a yield spread premium (YSP)[2] in the amount of $1,264. The YSP was “(P.O.C.)” or paid outside closing.
In a notice dated June 19, 2008, Parnell invoked her right to rescind the security interest under the Truth in Lending Act.[3] In the notice, she indicated that her loan is governed by the Home Ownership and Equity Protection Act (HOEPA) because the points and fees charged in connection with her loan exceeded eight percent of the total loan amount. Claiming she had not been given the disclosures required by HOEPA, she sought rescission of the mortgage on her home. See 15 U.S.C. § 1639(A)(1); 12 C.F.R. § 226.32(c). Accordingly, she demanded that the lender take all actions necessary or appropriate to reflect the termination of the security interest and return all of the money she had paid in connection with the loan. She further informed the lender that it would be liable for actual and statutory damages pursuant to 15 U.S.C. § 1640(a), together with attorney fees and costs, if it failed to comply with her requests.
Beginning in September 2003, Parnell allegedly failed to make monthly installment payments that became due on her loan. Parnell’s requests in her June 19, 2003 letter were denied by the lender in a letter dated September 24, 2003, because her loan did not meet the threshold requirement of HOEPA as the total amount of points and fees was only 6.7 percent. Installment payments remitted by Parnell after that date were returned to her pending the resolution of the matter.
| oThe Bank of New York, acting solely in its capacity as Trustee for EQCC Trust 2001-2 (Bank), filed a petition for executo-ry process on April 16, 2004, seeking to seize and sell Parnell’s home in light of her alleged failure to make installment payments on her promissory note that were due in September 2003 and afterwards. A writ of seizure and sale was issued on April 19, 2004, and the property was constructively seized.
On May 17, 2004, Parnell filed a “Petition for an Order Suspending the Seizure and Sale Order and/or Preliminary Injunction and/or Permanent Injunction and/or for Damages and/or for the Return of the Seized Properties” in the Bank’s executory process proceedings, alleging among other matters a violation of HOEPA for failing to provide statutorily-required disclosures.[4]
The property was not sold, and Parnell was never dispossessed of the property. The loan, evidenced by the note and secured by the mortgage, was paid in full on June 26, 2006, from insurance proceeds following Hurricane Katrina. A notice of mortgage cancellation was filed on or about October 5, 2006.
On September 11, 2008, the Bank filed a motion for summary judgment, seeking the dismissal of all of the claims asserted in Parnell’s petition. In relevant part, the Bank urged that Parnell’s loan was not subject to HOEPA since the YSP paid by the lender is not included in the points and *163 fees calculation. Parnell opposed the Bank’s motion contending that the YSP was ultimately paid by her over the life |4 of the loan and that “all compensation paid to mortgage brokers” constitute “points and fees”[5] under HOEPA.
The pertinent issue presented by the Bank’s motion for summary judgment was whether the YSP is included in HOEPA’s “points and fees” calculation. See 15 U.S.C. § 1602(aa)(l)(B) & (aa)(4). Relying on Schuetz v. Banc One Mortgage Corporation, 292 F.3d 1004 (9th Cir.2002), cert. denied, 537 U.S. 1171, 123 S.Ct. 994, 154 L.Ed.2d 913 (2003), the Bank urged that the YSP is a payment by a lender to a mortgage broker for obtaining a loan at an interest rate above the minimum interest rate approved by a lender for a particular loan. Although the consumer may ultimately be responsible for payment of the YSP in terms of the payment of a higher interest rate, such payment occurs over the life of the loan; therefore, the Bank urged that the YSP was not payable by the consumer at or before the closing.
Following the hearing on the Bank’s motion, the trial court found that the YSP paid by the lender to the mortgage broker outside of closing is not included in HOE-PA’s “point and fees” calculation because it was not paid or payable by Parnell at the time of closing. The trial court noted that the YSP was not factored into the principal amount loaned to Parnell. Rather, the YSP resulted from a separate agreement between the broker and the lender because of a higher interest rate, which could have been declined by Parnell. She could have sought financing through another entity. Therefore, the Bank’s motion for summary judgment was granted, and Parnell’s petition was dismissed with prejudice.[6] From that judgment, Parnell appealed.
| r,Concerning her challenge of the trial court’s ruling on the HOEPA claim,[7] the appellate court found that the applicable phrase in 15 U.S.C. § 1602(aa)(l)(B) was subject to two interpretations — one favoring the consumer and one favoring the lender. Bank of New York v. Parnell, 09-439, p. 11 (La.App. 5 Cir. 1/26/10), 32 So.3d 877, 885. Noting that it had adopted a consumer-oriented view to HOEPA and a related regulation, Regulation Z, in Zeno v. Colonial Mortgage and Loan Corp., OS-246 (La.App. 5 Cir. 11/25/08), 4 So.3d 93, writ not considered, 09-0005 (La.3/6/09), 3 So.3d 473,[8] and relying on the federal cases that had ruled in favor of the consumer on this issue,[9] the appellate court found that the term “payable” should be interpreted as meaning legally enforceable or obligated to pay rather than paid. See Bank of New York, 09-439 at 13-14, 32 So.3d at 886. Finding that Parnell was *164 legally obligated to pay the yield spread amount at or before closing by means of her obligation to pay a higher rate of interest through the life of the loan, the appellate court determined that the YSP should be included in HOEPA’s points and fees calculation. With the inclusion of the YSP in the calculation, the total points and fees exceeded eight percent of the total loan amount; therefore, Parnell’s loan was subject to the disclosure requirements of HOEPA. Accordingly, that portion of the trial court’s judgment granting summary judgment as to Parnell’s HOEPA claim was reversed, and the case was remanded to the trial court for consideration of Parnell’s ^J^HOEPA and wrongful seizure claims.[10] See Bank of New York, 09-439 at 14, 37, 32 So.3d at 886-87, 900.
The Bank then filed a writ application with this court contending that the appellate court erred as a matter of law in its interpretation of 15 U.S.C. § 1602(aa)(l)(B) by construing the phrase “total points and fees payable by the consumer at or before closing” to include a YSP paid by the lender to a mortgage broker outside of closing such that Parnell’s mortgage would be subject to HOE-PA.
DISCUSSION
The Truth in Lending Act (TILA) was enacted in 1968. Its declared purpose is “to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him [or her] and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices”. 15 U.S.C. § 1601(a); Beach v. Ocwen Federal Bank, 523 U.S. 410, 412, 118 S.Ct. 1408, 1409-10, 140 L.Ed.2d 566 (1998). Accordingly, TILA requires creditors to provide borrowers with clear and accurate disclosures of terms addressing matters such as finance charges, annual percentage rates of interest, and the borrower’s rights. Beach, 523 U.S. at 412, 118 S.Ct. at 1410; see 15 U.S.C. §§ 1631, 1632, 1635, 1638.
HOEPA is an amendment to TILA, enacted in 1994 in response to increasing reports of abusive practices in home mortgage lending. Cooper v. First Gov’t Mortgage and Investors Corp., 238 F.Supp.2d 50, 54 (D.D.C.2002). At its core, HOEPA “creates a special class of regulated loans that are made at higher interest rates or with excessive costs and fees.” In re Community Bank of Northern Virginia, 418 F.3d 277, 304 (3d Cir.2005). “As such, Congress has determined that HOEPA loans are subject to special disclosure requirements above and beyond the disclosure requirements of TILA, and the statute imposes liability (upon creditors and assignees of creditors making such loans) in instances where material disclosures compliant with HOEPA are not timely made.” In re Balko, 348 B.R. 684, 690 (Bankr.W.D.Pa.2006), citing 15 U.S.C. §§ 1639, 1641.
Because of complexity and variety, credit transactions defy exhaustive regulation by a single statute. Congress therefore delegated expansive authority to the Federal Reserve Board (Board) to elaborate and expand the legal framework governing commerce in credit. Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 559-60, 100 S.Ct. 790, 794, 63 L.Ed.2d 22 (1980), citing 15 U.S.C. § 1604. “The Board executed its responsibility by pro *165 mulgating Regulation Z, 12 C.F.R. Part 226 (1979), which at least partly fills the statutory gaps.” Ford Motor Credit Co., 444 U.S. at 560, 100 S.Ct. at 794. “Congress has specifically designated the Board and staff as the primary source for interpretation and application of [TILA].” Ford Motor Credit Co., 444 U.S. at 566, 100 S.Ct. at 797. Therefore, courts are to afford Regulation Z “strong deference.” Cetto v. LaSalle Bank Nat. Ass’n, 518 F.3d 263, 274 (4th Cir.2008). Unless “demonstrably irrational,” opinions of the Board’s staff construing TILA or Regulation Z should be dispositive. Ford Motor Credit Co., 444 U.S. at 565, 100 S.Ct. 797.
In considering the issue presented to this court, we are mindful that “TILA is a remedial statute and should be construed liberally in favor of the consumer.” Bizier v. Globe Financial Services, Inc., 654 F.2d 1, 3 (1st Cir.1981). “[T]he purpose of TILA, to assure meaningful disclosure of credit terms to consumers, would arguably be better served by requiring full disclosure of the YSP.” In re Mourer, 309 B.R. 502, 505 (W.D.Mich.2004). “[Although the courts are obliged to construe the law so as to effectuate its purpose, this duty does not include license to ignore the law’s clear and unambiguous terms or to refrain from enforcing the law in accordance with its plain meaning.” Mourer, 309 B.R. at 505, citing United States v. Miami University, 294 F.3d 797, 812 (6th Cir.2002).
At the time of Parnell’s loan, 15 U.S.C. § 1602, in pertinent part, provided:[11]
(aa)(l) A mortgage referred to in this subsection means a consumer credit transaction that is secured by the consumer’s principal dwelling, other than a residential mortgage transaction, a reverse mortgage transaction, or a transaction under an open end credit plan, if—
[[Image here]]
(B) the total points and fees payable by the consumer at or before closing will exceed the greater of-
(i) 8 percent of the total loan amount; or
(ii) $400.
[[Image here]]
(4) For purposes of paragraph (1)(B), points and fees shall include—
(A) all items included in the finance charge except interest or the time-price differential;
(B) all compensation paid to mortgage brokers[.] [Emphasis added.]
According to 15 U.S.C. § 1602(aa)(l)(B), HOEPA’s application to a particular mortgage loan is triggered if “the total points and fees payable by the consumer at or before closing will exceed the greater of (i) 8 percent of the total loan amount; or (ii) $400.” See 12 C.F.R. § 226.32(a)(ii) of Regulation Z. Under HOEPA, the phrase “points and fees” includes all compensation paid to mortgage brokers and excludes 1 ginterest. See 15 U.S.C. § 1602(aa)(4)(A) & (B); 12 C.F.R. § 226.32(b)(l)(i) & (ii). However, all “points and fees” must be “payable by the consumer at or before closing.” (Emphasis added.) 15 U.S.C. § 1602(aa)(l)(B); 12 C.F.R. § 226.32(a)(1)(h).
The Bank argues that the plain language of the statute unambiguously excludes amounts not paid by the consumer and amounts paid over the course of the loan. In support of its argument, the Bank cites In re Balko, 348 B.R. 684. In In re Balko, *166 the court found that “HOEPA unequivocally states that the statute applies to certain mortgage transactions when ‘the total points and fees payable by the consumer at or before dosing [will] exceed’ ” the requisite percentage. In re Balko, 348 B.R. at 692-93. The In re Balko court explained that the YSP “is paid and derived from the stream of interest generated over the life of the loan, and is not ‘payable by the consumer at or before the time of closing’” and is, therefore, not included in the points and fees calculation set forth in 15 U.S.C. § 1602. Id. at 693.
The district court in In re Mower found that the bankruptcy court erred in including the YSP in the points and fees calculation of the eight percent trigger of 12 C.F.R. § 226.32(a)(l)(ii) since there was no evidence that the consumer paid the YSP at or before closing.[12] In re Mourer, 309 B.R. at 505.[13] As noted in In re Collins, 310 B.R. 299 (Bankr.N.D.Miss.2004), “[wjhile the lender’s contribution to the mortgage broker’s fee [through the YSP] will obviously be more than repaid by the [consumer] over the life of the loan through the elevated interest rate, the plain |10meaning of the statute, i.e., ‘payable by the consumer at or before closing,’ cannot be ignored.” In re Collins, 310 B.R. at 303; see Wingert v. Credit Based Asset Servicing and Securitization, LLC, No. 02-1973, 2004 WL 2915306 (W.D.Pa. 2004); [14] see also Mills v. Equicredit Corporation, 344 F.Supp.2d 1071, 1077 (E.D.Mich.2004), aff'd, 172 Fed.Appx. 652 (6th Cir.2006). The courts in Nunn v. IMC Mortgage Company, 308 B.R. 150, 152 (W.D.N.Y.2004), and In re Sigle, 310 B.R. 303, 307 (Bankr.N.D.Miss.2004), also declined to include the indirect fee paid to the broker by the lender in determining the eight percent trigger.
Parnell cites Macheda v. Household Finance Realty Corporation of New York, 631 F.Supp.2d 181 (N.D.N.Y.2008), Hodges v. Swafford, 863 N.E.2d 881 (Ind.App.2007), reh’g granted on other grounds, 868 N.E.2d 1179 (Ind.App.2007), and Short v. Wells Fargo Bank Minnesota, N.A., 401 F.Supp.2d 549 (S.D.W.Va.2005), in support of her position that the YSP was payable by her at or before closing.
In Short, the closing fees were financed by the borrower and added to the principal of the loan. After noting that the facts in the case made it unnecessary for the court at the summary judgment stage to further interpret the phrase “payable by the consumer at or before closing” in 15 U.S.C. § 1602(aa), the court in Short stated that the term “payable” should be interpreted as meaning “legally enforceable” or “obligation to pay.” Short, 401 F.Supp.2d at 562. Moreover, the court stated that “it appears from the Federal Reserve Board’s Official Staff Interpretation of 12 C.F.R. § 226.32(b)(1)(h) that fees paid to a mortgage broker directly or indirectly are included in the calculation of fees and points.” Id. Finally, the court noted that TILA |n“was designed to protect consumers like the plaintiff here, not more sophisticated lending and financial institutions, *167 who are able to control the structure of the loan transaction.” Short, 401 F.Supp.2d at 562. The Short court observed that Congress used the term “payable,” rather than the term “paid,” in Section 1602(aa) to focus on the fact that the consumer bears the cost of those fees at the time of closing, and not whether those fees were financed, paid separately, or deducted from the loan proceeds.[15] Given the statute’s remedial purpose, the Short court found that allowing lenders and financial institutions to manipulate the payment of points and fees in transactions of this nature to avoid triggering the HOEPA protections would be unfair and defeat the purpose of the law. Id. at 562-63. Like Short, the consumers in Macheda and Hodges financed the closing costs of the loan over the entire life of the loan so nothing was paid by the borrower at closing, and the court found that those costs were payable by the consumer at or before closing. Macheda, 631 F.Supp.2d at 183 & 187; Hodges, 863 N.E.2d at 889-90.
Parnell relies on Macheda, Hodges, and Short to show that the YSP, although not paid in cash by her at the time of closing, was still payable by her at or before closing. She urges that such a finding is supported by the Federal Reserve Board’s Official Staff Commentary of Regulation Z, which provides, in pertinent part:
In determining “points and fees” for purposes of this section, compensation paid by a consumer to a mortgage broker (directly or through the creditor for delivery to the broker) is included in the calculation whether or not the amount is disclosed as a finance charge. Mortgage broker fees that are not paid by the consumer are not included.
112Off trial Staff Commentary, 12 C.F.R. Part 226, Supp. I § 226.32(b)(l)(ii).[16] According to Parnell, this commentary states that all fees paid to the broker directly and indirectly are compensation and should be included in the points and fees calculation by virtue of 12 C.F.R. § 226.32(b)(l)(ii) of Regulation Z, which requires the inclusion of “all compensation paid to mortgage brokers” in the computation of “points and fees.” We observe, however, that the second sentence of the commentary clearly indicates that mortgage broker fees that are not paid by the consumer are not included in the HOEPA “points and fees” calculation. The second sentence of the commentary is clear and emphatic. Thus, amounts paid to the mortgage broker by a secondary source should be excluded from the calculation. The Board’s interpretation is rational and is consistent with the express language of HOEPA and Regulation Z. Because the YSP in this case was paid by the lender not the borrower/consumer, the YSP is not included in the calculation for determining the applicability of HOEPA.
Furthermore, the issue presented in this case is distinguishable from the issue resolved by the courts in Macheda, Hodges, and Short. See Short, 401 F.Supp.2d at 562 n. 4. The YSP in this case, like in In re *168 Mourer, Nunn, In re Collins, and In re Sigle, was not a closing fee that was financed by the consumer. The YSP was not included in the total settlement charges on the HUD-1 Settlement Statement that were paid from Parnell’s funds at settlement; it did not impact the principal amount of the loan; it did not reduce the amount of the loan proceeds available to Parnell at settlement. In that respect, the YSP is distinguishable from broker fees referred to on line 810 of the HUD-1 Settlement Statement, which was $3,400.
|1sAs stated by the court in Short, lenders generally pay the YSP to the brokers without any guarantee that the fees will be recouped, given that the borrowers have the legal right to pay their loans off early (which Parnell did in this case) and, thus, the borrowers are not legally obligated to reimburse their lenders for paying the fees in question. See Short, 401 F.Supp.2d at 562 n. 4. Thus, even Short supports the Bank’s argument that the YSP paid by the lender in connection with Parnell’s loan was not “payable by the consumer at or before closing,” and, therefore, is not included in the “points and fees” calculations. Nor do we find under the facts of this case that the inclusion of the prepayment penalty in the promissory note guaranteed at the time of the closing that Parnell would have to account for the YSP in the event that she paid off her loan early.[17] Because the record in this case is devoid of factual support sufficient to establish that Parnell would be able to satisfy her evidentiary burden of proof as to this issue at trial, there is no genuine issue of material fact. See LSA-C.C.P. art. 966(C)(2).
To find that the YSP paid by the lender to broker, and ultimately to be paid by the borrower to the lender over the course of the loan (in the form of an enhanced interest rate on the borrowed principal), is a fee “payable by the consumer at or before loan closing” under 12 C.F.R. § 226.32(a)(l)(ii) would be to overlook the letter of the | Mlaw in order to enforce the spirit of the law. See In re Mourer, 309 B.R. at 504; accord, In re Collins, 310 B.R. at 302; In re Sigle, 310 B.R. at 307. Only those fees that are “payable by the consumer at or before closing” are to be included. See 15 U.S.C. § 1602(aa)(l)(B). Where the YSP is paid by the lender to the broker at the time of closing and the borrower’s obligation is payable in the form of a higher interest rate, not at or before the closing, but over the course of the loan, the YSP is not properly included in the calculation of the eight percent trigger. See In re Mourer, 309 B.R. at 504; accord, In re Collins, 310 B.R. at 302; In re Sigle, 310 B.R. at 307. Therefore, the YSP in this case was not payable by Parnell at or before closing as required by the applicable version of 15 U.S.C. § 1602(aa)(l)(B). This conclusion is supported by the majority of cases that have considered this issue and is bolstered by the fact that Congress, after years of unsuccessful attempts, has recently passed *169 legislation that addresses the indirect payment of the mortgage broker’s fee.[18] Accordingly, the trial court’s grant of summary judgment as to Parnell’s HOEPA and wrongful seizure claims was legally correct.[19]
CONCLUSION
For the foregoing reasons, those portions of the appellate court decision that reversed the trial court’s granting of summary judgment in favor of the Bank as to | isParnell’s HOEPA and wrongful seizure claims are reversed. With respect to these two claims, the judgment of the trial court is reinstated.
REVERSED; TRIAL COURT JUDGMENT REINSTATED.

. Retired Judge Philip C. Ciaccio, assigned as Justice ad hoc, sitting for Chief Justice Catherine D. Kimball; Retired Judge Robert J. Klees, assigned as Justice ad hoc, sitting for Justice Greg Guidry, recused.

. A YSP is a lump sum paid by a lender to a broker at closing when the loan originated by the broker bears an above-par interest rate. Schuetz v. Banc One Mortgage Corporation, 292 F.3d 1004 (9th Cir.2002), cert. denied, 537 U.S. 1171, 123 S.Ct. 994, 154 L.Ed.2d 913 (2003).

. See 15 U.S.C. § 1635.

.Parnell also alleged a violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605, a violation of the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, et seq., and a wrongful constructive seizure claim based on alleged errors in the foreclosure process.

. Parnell did not directly pay any amount at the time of the loan closing. All closing costs were financed by her.

. In addition to the HOEPA issue, the trial court rejected all of the other issues that had been raised in Parnell’s petition.

. Parnell also assigned error as to the trial court’s grant of summary judgment as to all of the other claims that had been raised in her petition.

. Zeno involved an action to rescind a loan under HOEPA for inclusion of a prepayment penalty in the loan document. In deciding the matter, the court in Zeno observed that HOEPA and Regulation Z should be interpreted in favor of the consumer. Zeno, 08-246 at 11, 4 So.3d at 100.

.See Macheda v. Household Finance Realty Corp. of New York, 631 F.Supp.2d 181 (N.D.N.Y.2008); Hodges v. Swafford, 863 N.E.2d 881 (Ind.App.2007), reh'g granted on other grounds, 868 N.E.2d 1179 (Ind.App. 2007); Short v. Wells Fargo Bank Minnesota, N.A., 401 F.Supp.2d 549 (S.D.W.Va.2005).

. The court of appeal affirmed the trial court’s grant of summary judgment on the claims for violation of the Real Estate Settlement Procedures Act and Louisiana Unfair Trade Practices and Consumer Protection Law.

. Many provisions of TILA, including 15 U.S.C. § 1602, were amended by the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub.L. No. 111-203, H.R. 4173 (July 21, 2010).

. In re Mourer, 287 B.R. 889 (Bankr.W.D.Mich.2003), vacated, 309 B.R. 502, 505 (W.D.Mich.2004).

. In In re Mourer, the YSP had been paid by the lender at the time of the closing of the loan, and the consumer’s obligation to ultimately pay the YSP was payable in the form of a higher interest rate over the course of the loan. In re Mourer, 309 B.R. at 505.

.The Wingert court held that even if the YSP were viewed as having been paid by the consumer over the course of the loan through a higher interest rate, that premium would not be paid at or before closing. Wingert, 2004 WL 2915306 at *6.

. Short, 401 F.Supp.2d at 562. This determination is at odds with the court’s decision in Terry v. Community Bank of Northern Virginia, 255 F.Supp.2d 811 (W.D.Tenn.2003), which declared that 15 U.S.C. § 1602(aa)(l)(B) clearly requires that points and fees be payable "at or before closing,” not over the course of the loan. Because the origination and title fees had been paid by the borrower and added to the principal of the loan, the court in Terry found that they were not payable at or before closing. Terry, 255 F.Supp.2d at 816-17. The Short court disagreed, stating that Terry and its progeny have been wrongly decided. See Short, 401 F.Supp.2d at 562-63.

. See 61 Fed.Reg. 14952-01 (April 4, 1996).

. Parnell's promissory note provided:
I may make a full or partial prepayment; however, if such a prepayment is made within 3 years of the date of this Note, the Note Holder may charge me for the privilege of prepayment a prepayment charge equivalent to 3 months interest at the rate set forth above on the amount of the principal balance prepaid.... No prepayment charge may be collected if the loan is accelerated due to my default, your exercise of any due-on-sale clause in the Security Instrument securing this loan, or if this loan is renewed or refinanced by you, or if this loan is prepaid from proceeds of any loan [made] in the future by Lender to me.
Parnell’s loan was made on May 9, 2001, and was paid off, after default, more than three years later on June 26, 2006; therefore, she would not have been liable for the prepayment penalty under the terms of the promissory note.

. The 2010 legislation amended 15 U.S.C. § 1602(aa)(l) replacing "points and fees payable by the consumer at or before closing” with "points and fees payable in connection with the transaction.” See Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub.L. No. 111-203, H.R. 4173, § 1431 (July 21, 2010). Pursuant to the 2010 amendment to 15 U.S.C. § 1602(aa), points and fees now include:
all compensation paid directly or indirectly by a consumer or creditor to a mortgage originator from any source....

. The interpretation of a statute is a question of law subject to de novo review. Louisiana Municipal Association v. State, 04-0227, p. 35 (La.1/19/05), 893 So.2d 809, 836.